Kent **EARNHARDT**, etc., Plaintiff, Appellant,

v.

The **COMMONWEALTH OF PUERTO RICO**, etc., et al., Defendants, Appellees.

No. 82–1190.

United States Court of Appeals, First Circuit.

Argued Sept. 13, 1982.

Decided Oct. 26, 1982.

Carlos V. Garcia Gutierrez, Santurce, P.R., for plaintiff, appellant.

Marta Quinones De Torres, Asst. Sol. Gen., Dept. of Justice, with whom Miguel Pagan, Acting Sol. Gen., San Juan, P.R., was on brief, for defendants, appellees.

Colleen M. O'Connor, Washington, D.C., with whom Michael J. Connolly, Gen. Counsel, Philip B. Sklover, Associate Gen. Counsel, and Vincent Blackwood, Asst. Gen. Counsel, Washington, D.C., were on brief, for the E.E.O.C., amicus curiae.

* Of the Federal Circuit, sitting by designation.

Before DAVIS,* CAMPBELL and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Kent Earnhardt brought suit in federal district court alleging that the Puerto Rico Department of Health had discharged him because of his national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* Puerto Rico moved for summary judgment arguing that Earnhardt had filed his charge with the Equal Employment Opportunity Commission (EEOC) after the applicable 180-day limitations period had run. 42 U.S.C. § 2000e–5(e). Earnhardt filed his charge on July 19, 1977, 179 days after his discharge took effect on January 21, 1977 and 204 days after receiving notice of his discharge on December 27, 1976. Concluding that the "alleged unlawful employment practice occurred" when Earnhardt received notice of his discharge, the district court granted Puerto Rico's motion.

In this appeal, Earnhardt agrees that limitations periods would in general begin to run under Title VII when an employee receives notice that a "final decision [has] been made to terminate" his employment. *Chardon v. Rivera Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981). Because, however, Puerto Rico refused to explain his discharge and had not posted notices informing employees of their rights under Title VII, Earnhardt contends the Commonwealth is equitably barred from raising his untimely filing as a defense to his discrimination claim. Earnhardt points out that the Supreme Court has approved the application of equitable principles to Title VII limitations periods. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). He argues further that because equitable modification turns on the facts of the particular case, his complaint was a poor candidate for dismissal on summary judgment. Before taking up these arguments, we set forth

more fully the facts as they appear in the pleadings and affidavits.

## I.

On December 27, 1976 Earnhardt received a letter dated December 20 from José A. Alvarez de Choudens, Secretary of the Puerto Rico Department of Health, stating "[c]ontract # 76–786 signed by you and the Department of Health . . . will be rescinded as of 21st of January, 1977, which is notified to you for the pertinent purposes." The letter observed that the contract was rescinded pursuant to clause 11, a provision permitting termination upon 30-day notice. Believing that this action violated the Puerto Rico Public Service Personnel Act, P.R. Laws Ann. tit. 3, § 1337, which prohibits "movement of personnel" within two months of the general elections, Earnhardt inquired into the reasons for his discharge. A series of unhelpful interviews with his superiors in the Department followed: one official refused to discuss his discharge; another failed to attend a meeting arranged to discuss the matter; and the Department was unable or unwilling to provide Earnhardt a copy of his personnel file. Sometime later, Earnhardt visited Washington, D.C., to seek employment and noticed posters describing the Title VII prohibition against discrimination and outlining the procedure for filing a complaint with the EEOC. He filed his complaint a short time later.

## II.

■ Earnhardt argues initially that Puerto Rico's silence in the face of his inquiries prevented him from learning that his discharge was discriminatorily based on his national origin. Where, however, there is no basis for finding that Puerto Rico actively misled him, the mere refusal to explain the grounds for discharge had no equitable consequences. Courts have taken a uniformly narrow view of equitable exceptions to Title VII limitations periods. Thus, in *Smith v. American President Lines, Ltd.,* 571 F.2d 102 (2d Cir. 1978), the court concluded that equitable modification is appropriate only where the employer actively misled the employee concerning the reasons for the discharge. This view is consistent with Congress's assumption, in adopting relatively short limitations periods, that employees will normally suspect discriminatory motives at the time of their discharge. In *Hart v. J. T. Baker Chemical Corp.,* 598 F.2d 829 (3d Cir. 1979), the court refused to invoke equitable principles where the facts recited in the complaint were all known to the plaintiff at the time of his discharge.

Nothing in *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975), cited by Earnhardt, is to the contrary. The female employee in that case was told her discharge resulted from a lack of funds. Seven months later she learned that a less competent male had been hired in her place. Concluding that the defendant "actively sought to mislead" the plaintiff, the Fifth Circuit remanded to the district court. *Id.* at 930–31. Earnhardt was not, however, given a phony reason for his discharge. Not giving any reason is altogether different from providing a specious one. Far from lulling the dischargee, the withholding of any reason suggests that a discriminatory or other improper reason may be involved. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

■ Similarly, we find little to support the EEOC's contention as amicus that the cause must be remanded to determine whether the notice Earnhardt received was of sufficient clarity. The Court in *Chardon v. Rivera Fernandez,* 102 S.Ct. at 29, did not discuss what degree of clarity may be required, but whatever the standard we believe Puerto Rico's letter to Earnhardt would meet it. Signed by the same official who signed Earnhardt's employment contract, the letter unambiguously stated that the contract was rescinded pursuant to the 30-day notice provision. However unexpected this piece of news, it clearly conveyed the discharge decision. Nothing that allegedly occurred during the period between the date of notice and the date of discharge could have lulled Earnhardt into

falsely concluding that his discharge was less than final. Earnhardt's statement that he suspected that the discharge violated Puerto Rico law supports the conclusion that the fact of discharge was evident.

We accordingly reject Earnhardt's contention that Puerto Rico's failure to explain tolled the running of the 180-day limitations period. We also reject the EEOC's argument that the letter of December 20, 1976 was too vague to constitute an effective notice of discharge.

### III.

We now turn to Earnhardt's argument that Puerto Rico's alleged failure to post statutorily required notices excused his untimely filing. He asserts in his affidavit that he learned of the EEOC complaint procedure for the first time in July 1977 during a Washington, D.C. visit and filed his complaint a short time later. He argues that he would have filed within the 180-day limitations period but for Puerto Rico's purported violation of 42 U.S.C. § 2000e–10, which provides that

> (a) Every employer ... shall post and keep posted in conspicuous places upon its premises ... a notice to be prepared or approved by the Commission setting forth excerpts from or, summaries of, the pertinent provisions of this subchapter and information pertinent to the filing of a complaint.
>
> (b) A willful violation of this section shall be punishable by a fine of not more than $100 for each separate offense.

This statutory posting requirement performs two functions: it informs employees of their rights and increases the likelihood that discriminatory acts will be investigated, thereby reducing the incidence of discrimination. It follows, according to Earnhardt, that Puerto Rico should not be permitted to plead the statute of limitations when its own failure to post congressionally required notices contributed to his filing delay.

In response, Puerto Rico has cited a single case, *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 109 (2d Cir. 1978),

for the proposition that a failure to post the required notices has no equitable consequences. In *Smith,* the court concluded on all the facts that the plaintiff had not established a case for equitable modification. In rejecting the failure-to-post argument, the court emphasized that the plaintiff had retained counsel more than 180 days prior to filing his charge. The retention of counsel, the court reasoned, severed any causal relationship between the employer's failure to post and the plaintiff's late filing. This distinguished the case, in the court's view, from two Fifth Circuit opinions which concluded that the employer's failure to comply with a similar posting provision in the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.,* supported equitable modification of the limitations period. Far from being a wholesale disavowal of Earnhardt's contention, *Smith* seems to accept the failure-to-post theory but to have found it factually inapplicable.

Aside from *Smith,* we have not found any Title VII cases that consider the failure-to-post argument. As *Smith* itself reflects, however, courts often accept ADEA precedents as persuasive interpretations of similar provisions appearing in Title VII. *See, e.g., Hart v. J. T. Baker Chemical Corp.,* 598 F.2d 829, 831 (3d Cir. 1979) (earlier Third Circuit opinion construing ADEA to permit equitable tolling of limitations period persuasive on question whether Title VII limitations periods are subject to equitable modification). It seems appropriate, therefore, to review the ADEA precedent.

In general the ADEA cases stand for the proposition that an employer's failure to post the required notices equitably bars the employer from pleading limitations where the employee had no other actual or constructive knowledge of ADEA complaint procedures. Thus the courts have uniformly held that an alleged failure to post is sufficient to withstand a motion for summary judgment. *See Wright v. Tennessee,* 628 F.2d 949 (6th Cir. 1980) (en banc); *Wilkerson v. Siegfried Insurance Agency, Inc.,* 621 F.2d 1042 (10th Cir. 1980); *Bonham v. Dresser Industries, Inc.,* 569 F.2d

187 (3d Cir. 1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Pirone v. Home Insurance Co.,* 507 F.Supp. 1281 (S.D. N.Y.1981); *Skoglund v. Singer Co.,* 403 F.Supp. 797 (D.N.H.1975). On the merits, tolling is inappropriate where the employee actually knew of ADEA complaint procedures, *see Adams v. Federal Signal Corp.,* 559 F.2d 433 (5th Cir. 1977) (employee's job responsibilities included duty to post contested notices); *Wilkerson v. Siegfried Insurance Agency, Inc.,* 683 F.2d 344 (10th Cir. 1982) (perforated copies of previously posted notices found in plaintiff's office), and where the employee can be constructively charged with knowledge of the procedures. *See Wilkerson,* 683 F.2d at 344 (employer did in fact post notices); *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.,* 515 F.2d 1195, 1200 n. 8 (5th Cir. 1975) (plaintiff's retention of counsel supplied "means of knowledge"). *But cf. Charlier v. S. C. Johnson & Son, Inc.,* 556 F.2d 761, 765 (5th Cir. 1977) (concluding that statute imposed duty on employers to take steps beyond posting in cases where particular employees are unlikely to learn of their rights through posting alone).

Such authority as there is, therefore, suggests that a failure to post may, in some circumstances, toll the statute of limitations. On the present undeveloped record, however, we are reluctant to decide whether to adopt such a principle in this circuit. In enacting relatively short limitations periods, Congress intended to provide employers a measure of repose. It doubtless foresaw the unfairness and inefficiency that might result from an extended period of uncertainty over who is entitled to a particular job in the public or private sector. Courts, therefore, should not create generalized exceptions to limitations periods which will invite litigants to interrupt this repose with stale or dormant claims. In addressing an equitable claim based upon an asserted failure to post, moreover, a court must consider a potentially endless combination of questions. Did the employer post notices anywhere? If so, were they posted conspicuously? In one building but not in another? On every floor? If not, did the employee have actual or constructive knowledge of his rights? And so on. Together, these problems of staleness and complexity caution against ruling finally on the equitable effect of non-posting in a case where the facts remain as yet totally undeveloped. We do not, therefore, attempt to do so at this time.

■ Rather, we hold only that Earnhardt has made a sufficiently persuasive showing that there *might* be merit to his equitable tolling claim, based on a failure to post, to avoid summary judgment on that issue.[1] We remand to the district court for an evidentiary hearing on Earnhardt's allegation that Puerto Rico's failure to post the required notices created an equitable bar to the running of the statute of limitations. After the hearing, the district court should make detailed findings on all pertinent facts concerning the claim that the Commonwealth of Puerto Rico did not post the required notices, including whether any notices at all were posted and if so where, and whether or not Earnhardt otherwise had actual or constructive notice. The court should then rule in accordance with its own best judgment as to the effect of such posting or non-posting in the existing circumstances, taking into account the relevant statutes and statutory history, the precedent described above and any other authorities the parties may present or the court itself discover. After the court has ruled,

1. In fact-sensitive cases such as this, involving a question of first impression, it may be advisable to refrain from formulating a circuit rule of law until the facts are before us. *Cf. Developmental Disabilities Advocacy Center v. Melton,* 689 F.2d 281 at 288–289 (1st Cir. 1982). A rule made prematurely, without benefit of a fully fleshed record, may be poorly framed and over-generalized. Here it is hard to ascertain the equities until the facts pertaining to them have been settled. Our remand, therefore, does not mean that this circuit now accepts the principle that non-posting tolls the statute of limitations. We merely recognize that that doctrine has sufficient support elsewhere to entitle plaintiff to his day in court, during which he can try to persuade first the district judge and then ourselves that such a doctrine is valid and applies to him.

we will be in a position to review the matter, if need be, on a fully developed record that will contain the essential facts.

*Vacated and remanded for further proceedings consistent with this opinion.*