Richard D. LEITE, et al., Plaintiffs,

v.

KENNECOTT COPPER CORPORATION, Defendant.

Civ. A. Nos. 80–396–N, 80–534–N.

United States District Court, D. Massachusetts.

March 3, 1983.

John T. Murray, Miles & Murray, Taunton, Mass., for plaintiffs.

George H. Foley, Hale & Dorr, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

DAVID S. NELSON, District Judge.

In these consolidated actions, six former employees of the Kennecott Copper Corporation allege that defendant, in discharging them pursuant to a planned reduction in workforce, discriminated on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34. Defendant has moved for summary judgment on the ground that all claims are barred by the three-year statute of limitations applicable to willful violations of the Act. *See id.* § 626(e), *incorporating id.* § 255(a).

From the parties' various submissions, the following facts appear undisputed. The six plaintiffs were employed in different capacities, ranging from metallurgy technician to in-house patent counsel, at defendant's Ledgemont Laboratory in Lexington, Massachusetts. For economic reasons, defendant determined that a reduction in the Laboratory's workforce was necessary, a decision which it announced at a general employees meeting at the end of January 1977. The six plaintiffs, along with some twenty other employees selected for termination, were individually notified by their respective superiors on or around February 1 on an oral, "unofficial" basis, to afford them an opportunity to seek other employment. Formal written notice of discharge was received by five of the plaintiffs on March 1, 1977, with March 30 designated as the effective date of discharge. Plaintiff McCarter, due to a hospital visit, received

written notice of his termination on April 22 and ceased working on May 22.

Plaintiffs filed their respective suits on the following dates: Hueber on February 29, 1980; McCarter, Leite, Barclay and Plant on March 21, 1980; and Bomhard on March 28, 1980. Consequently, if the three-year limitations period commenced on the date of oral notice, all six actions would be time-barred; if on the date of written notice, only Hueber's and McCarter's actions would survive; and if on the date of actual discharge, all six actions would survive. Not unexpectedly, defendant argues for the first of these alternatives and plaintiffs for the last.

█ The plaintiffs' contention—that the date of actual discharge controls—runs afoul of *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (per curiam). The respondents there brought a section 1983 action challenging the termination of their employment. Relying on *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Court ruled that the statute of limitations began to run, not on the designated date on which employment ceased, but rather when respondents were notified by letter that "a final decision had been made to terminate their appointments." 454 U.S. at 8, 102 S.Ct. at 29. "[T]he proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." *Id.* The *Chardon/Ricks* rule, which is equally applicable to age discrimination suits, *e.g. Pfister v. Allied Corp.,* 539 F.Supp. 224, 226 (S.D.N.Y.1982), therefore bars the suits by plaintiffs Leite, Barclay, Plant and Bomhard unless the circumstances surrounding their termination call for equitable modification of the limitations period.

█ That the running of the ADEA's statute of limitations is subject to equitable modification is well-established. Two general categories have been recognized: equitable estoppel, in which the defendant is deemed to some degree responsible for

plaintiff's delay in filing suit; and equitable tolling, which typically involves excusable ignorance or oversight on the plaintiff's part and lack of prejudice to the defendant. *See, e.g., Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir.1981). Plaintiffs here contend that the equitable tolling doctrine is applicable as a result of both factual and legal misrepresentations voiced to their attorney by officials of the two federal agencies which investigated the complaints. According to affidavits submitted by plaintiffs' counsel, he was advised "on numerous occasions" during 1978 and 1979 by an official of the Department of Labor, which first handled the cases, that the agency believed age discrimination had "probably" occurred and that it "would be commencing suit at any time on behalf of the plaintiffs." In September 1979, plaintiffs' counsel learned that the cases had been transferred to the Equal Employment Opportunity Commission (EEOC) and, upon contacting the responsible official, received similar assurances; suit by the EEOC, he was advised, awaited only the subpoenaing of pertinent documents from defendant. Over the next five months, the EEOC official continued to reassure counsel "on numerous occasions" that an agency suit was "imminent." Since under 29 U.S.C. § 626(c) the commencement of an action by the EEOC extinguishes an individual's right to bring a private action, plaintiffs' counsel, relying on the agency's representations, decided not to file suit. On February 26, 1980, however, the EEOC informed him that it would not pursue the cases solely because it was wary of contesting a challenge to its subpoena powers brought by defendant in federal court. Plaintiffs filed suit shortly thereafter.

Apart from such factual misdirection, plaintiffs also complain of legal misguidance by the EEOC. Their counsel avers that, during the pendency of the agency investigation, the EEOC official advised him that there was "no problem" with the statute of limitations since the agency investigation and its conciliation efforts "would extend the statute"—a contention

which misstates the law.[1] Given these separate misrepresentations, and in light of the Act's remedial objectives and the doctrinal confusion attending this area prior to the 1981 *Chardon* decision, plaintiffs argue that equitable modification of the limitations period is warranted.

The case law suggests otherwise. "Courts have taken a uniformly narrow view of equitable exceptions to ... limitations periods." *Earnhardt v. Commonwealth of Puerto Rico,* 691 F.2d 69, 71 (1st Cir.1982) (Title VII case). It must be noted at the outset that plaintiffs can derive no comfort from the unsettled state of the law prior to *Chardon v. Fernandez;* even if the result there can be deemed to have been unforeseeable, there is "no reason to attribute less clairvoyance" to the plaintiffs here than to Mr. Fernandez himself, whose claim of course was dismissed. *Gallagher v. American Sterilizer Co.,* 548 F.Supp. 643, 645 n. 2 (W.D.Pa.1982). Also plainly inadequate as a basis for equitable tolling is the plaintiffs' reliance on the EEOC's repeated assurances that an agency suit would be filed. No matter how worthy of reliance such assurances were, once the expiration of the limitations period approached, plaintiffs obviously could have filed suit merely to preserve their rights. Up to that time, they had been closely monitoring the EEOC's actions through their attorney who had been retained two years earlier. Their failure to undertake the simple step of protecting themselves in this manner cannot now be excused. *See Jackson v. Alcan Sheet & Plate,* 462 F.Supp. 82, 87 (N.D.N.Y. 1978) ("Waiting due to faith in the adequacy of one of two independent remedies is no excuse to justify tolling the statute of limitations of the other"); *cf. Chappell v. Emco Machine Works Co.,* 601 F.2d 1295 (5th Cir.

1979) (opinion of Clark, J., with Fay, J. concurring in the result) (pro se plaintiff's reliance on state agency's assurance that complaint had been filed with EEOC was insufficient to toll Title VII's 180-day filing period).

By contrast, the nature of the agency's second misrepresentation—that the limitations period was "no problem" and would be "extended" while conciliation efforts were pursued—presents a situation in which equitable tolling typically has been invoked. On the theory that a complainant is "entitled to rely on ... seemingly authoritative statement[s] by the agency presumed to know the most about these matters," *Page v. U.S. Indus., Inc.,* 556 F.2d 346, 351 (5th Cir.1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978), courts have commonly modified the limitations period under such circumstances in the absence of substantial prejudice to defendant. *See, e.g., id.* (letter from EEOC erroneously informing Title VII claimant that she had ninety days from date of letter to file suit); *Lanyon v. University of Delaware,* 544 F.Supp. 1262, 1272 (D.Del.1982) (Title VII claimant misinformed by state agency about filing requirements); *Stutz v. Depository Trust Co.,* 497 F.Supp. 654 (S.D.N.Y. 1980) (same); *Abbott v. Moore Business Forms, Inc.,* 439 F.Supp. 643, 648–49 (D.N. H.1977) (misleading letter from Department of Labor to ADEA claimant). *Compare, e.g., Franklin v. Herbert Lehman College,* 508 F.Supp. 945, 951–52 (S.D.N.Y. 1981) (despite misleading agency letter, equitable tolling in Title VII case inappropriate because of prejudice to defendant). However, the claimants in each of these cases were acting without legal counsel. As noted above, the plaintiffs here had retained an attorney some two years prior to

1. Section 7(e)(2) of the Act does contain a one-year tolling provision for the period "during which the Secretary is attempting to effect voluntary compliance with requirements of this chapter through informal methods of conciliation, conference, and persuasion pursuant to subsection (b) of this section ...." 29 U.S.C. § 626(e)(2) (Supp.1978). As the reference to subsection (b) makes clear, however, this tolling provision applies only to the conciliation

efforts preceding the institution of legal action by the Secretary, not to those that might precede a private civil action. "Only the Secretary, not an aggrieved individual, benefits from the tolling provision." *Hovey v. Lutheran Med. Center,* 516 F.Supp. 554, 556 (E.D.N.Y.1981); *accord, Fulton v. NCR Corp.,* 472 F.Supp. 377, 382 (W.D.Va.1979); House Conf.Rep. No. 950, 95th Cong., 2d Sess., *reprinted in* 1978 U.S. Code Cong. & Admin.News 504, 528, 534.

the expiration of the limitations period—one who closely monitored the cases' progress. "The courts have repeatedly held that equitable tolling is inappropriate when the plaintiff has consulted counsel during the statutory limitation period." *Needham v. Beecham, Inc.,* 515 F.Supp. 460, 467 (D.Me.1981) (ADEA). *See, e.g., Keyse v. California Texas Oil Corp.,* 590 F.2d 45, 47 (2d Cir.1978) (per curiam) (Title VII); *Edwards v. Kaiser Alum. & Chem. Sales, Inc.,* 515 F.2d 1195, 1200 n. 8 (5th Cir.1975) (ADEA); *Sanders v. Duke Univ.,* 538 F.Supp. 1143, 1146 n. 2 (M.D.N.C.1982) (ADEA). "Counsel are presumptively aware of whatever legal recourse may be available to their client," *Downie v. Electric Boat Div.,* 504 F.Supp. 1082, 1087 (D.Conn. 1980) (ADEA), and "constructive knowledge" of the law's requirements is thereby imputed to an ADEA claimant. *Abbott v. Moore Business Forms, Inc.,* 439 F.Supp. at 646. In the present case, therefore, equitable modification of the limitations period would be inappropriate notwithstanding the apparent absence of prejudice to defendant. Summary judgment is granted dismissing as untimely the claims of plaintiffs Leite, Barclay, Plant and Bomhard.

■ Defendant contends that the claims of Hueber and McCarter must also be dismissed because the oral notice of termination conveyed to them on or around February 1, 1977 was sufficient to trigger the limitations period.[2] As described above, these plaintiffs received at that time what both sides have denominated "unofficial" notice and some weeks later received written "official" notice; only the latter designated a specific date of termination. On the basis of this sketchy record, and mindful that all inferences of fact must be drawn in the plaintiffs' favor, *e.g., Coke v. General Adjustment Bureau, Inc.,* 640 F.2d 584, 595 (5th Cir.1981) (en banc), the court is unpersuaded that summary judgment can

lie. Although notice of termination need not be in written form in order to trigger the limitations period, *see, e.g., Needham v. Beecham, Inc.,* 515 F.Supp. at 466; *Monroe v. Penn-Dixie Cement Corp.,* 335 F.Supp. 231, 233 (N.D.Ga.1971), it must unambiguously indicate that a final termination decision has been reached. The Court in *Chardon,* for example, although it "did not discuss what degree of clarity may be required," *Earnhardt v. Commonwealth of Puerto Rico,* 691 F.2d at 71, indicated that the written notices there informed the respondents that "a final decision had been made to terminate their appointments." 454 U.S. at 8, 102 S.Ct. at 29. In *Ricks,* the Court described the written notice in question as a "formal" rejection of Ricks' tenure bid—one that, rather than being "in any respect tentative," had been characterized in the letter itself as the Board's "official position." 449 U.S. at 261, 101 S.Ct. at 505–506. *See also Earnhardt v. Commonwealth of Puerto Rico,* 691 F.2d at 71 (written notice was "unambiguous" and "clear"); *Needham v. Beecham, Inc.,* 515 F.Supp. at 466 (oral notice was "unequivocal"). Although this court is reluctant to penalize the defendant for its seemingly benevolent desire to facilitate plaintiffs' search for alternative employment by providing early "unofficial" notice of termination, the present record precludes a finding that such notice sufficed to commence the limitations period. At trial, the court will initially confine the evidence to this issue, such that, if the oral notice provided to Hueber and McCarter proves to have possessed the requisite clarity, a trial on the merits can be avoided.

Defendant's motion for summary judgment is ALLOWED as to plaintiffs Leite, Barclay, Plant and Bomhard and DENIED as to plaintiffs Hueber and McCarter. SO ORDERED.

---

**2.** In the alternative, defendant argues that McCarter's claim must be dismissed because of his inability to show that defendant "sought someone to perform the same work after he left." *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1014 (1st Cir.1979). This factor, however, is not a prerequisite to the establishment of a prima facie case in reduction-in-workforce situations. *See, e.g., McCuen v. Home Ins. Co.,* 633 F.2d 1150, 1151–52 (5th Cir.1981) (per curiam).