Edmund H. LINN, Plaintiff,

v.

ANDOVER NEWTON THEOLOGICAL SCHOOL, Defendant.

Civ. A. No. 82–3908–T.

United States District Court,
D. Massachusetts,

Feb. 7, 1985.

Warren H. Pyle, Angoff, Goldman, Manning, Pyle & Wanger, Boston, Mass., for plaintiff.

Stuart DeBard, Weston, Patrick, Willard & Redding, Boston, Mass., for defendant.

## MEMORANDUM

TAURO, District Judge.

The plaintiff was a tenured professor at the defendant seminary until discharged at the age of sixty-two. He claims that his employment was terminated because of his age, in violation of the Age Discrimination in Employment Act[1] (ADEA) and Massachusetts law.[2] The plaintiff seeks reinstatement, damages and attorneys' fees. Presently at issue are the parties' cross motions for summary judgment.

### I.

The material facts are undisputed. On December 3, 1980, the executive committee of the defendant's board of trustees met, ordered the president to reduce the defendant's budget by at least $50,000, and appointed a four-member faculty advisory committee to make recommendations with respect to the implementation of its order. On December 11, 1980, the faculty advisory committee met and recommended that the plaintiff be discharged. On December 23, 1980, the executive committee accepted the faculty advisory committee's recommendation to discharge the plaintiff. On December 29, 1980, the plaintiff received a letter from the president, giving him one-year's notice of his discharge. The executive committee's discharge of the plaintiff was approved by the full faculty on March 6, 1981 and by the full board of trustees on May 6, 1981.

### II.

The defendant has moved for summary judgment on Count I of the complaint, which alleges that the plaintiff was terminated in violation of ADEA on the ground that the plaintiff failed to file a complaint with the Equal Employment Opportunity Commission (EEOC) within 300 days of being notified of his discharge.[3] The plaintiff did not file a complaint with the EEOC until November 6, 1981, approximately 312 days after his receipt of the president's December 29, 1981 letter.

The plaintiff takes the position that the president's letter did not constitute notice of his discharge, because the executive committee did not have the power to discharge him. The defendant argues, on the other hand, that the president's letter did give the plaintiff notice of his discharge. Resolution of this issue requires the court to interpret the defendant's rules as they regard the discharge of tenured faculty members.

The plaintiff relies on paragraph VIII of the defendant's Faculty Promotion and Tenure Policy, which incorporates the procedures for termination of tenured faculty set out in the "1972 Recommended Institutional Regulations on Academic Freedom and Tenure" (the "Regulations"). Regulation 4(c) states:

Where termination of an appointment with continuous tenure ... is based upon bona fide financial exigency ... faculty members shall be able to have the issues reviewed by the faculty or by an appropriate faculty committee (such as the faculty's greivance committee), with ultimate review of all contraverted issues by the governing board.

This court interprets Regulation 4(c) as requiring that the faculty member facing termination be allowed to participate in the

---

1. 29 U.S.C. § 621 et seq. (1982).

2. Mass.Gen.Laws Ann. ch. 151B (1982).

3. Under 29 U.S.C. § 626(d), a plaintiff may have 180 or 300 days to file a complaint with the EEOC, depending on the state in which the alleged violation took place. In a state such as Massachusetts, with a law prohibiting age discrimination and a state authority to enforce that prohibition, Mass.Gen.Laws Ann. ch. 151B (1982), the 300 day period is applicable. See Hadfield v. Mitre Corp., 562 F.2d 84, 87 (1st Cir.1977).

proceedings before the faculty group and the governing board. Without an opportunity to be heard, the faculty member in jeopardy would be unable to have the "issues reviewed" in any meaningful sense. Here, the defendant did not give the plaintiff an opportunity to participate in the deliberations of either the faculty advisory committee or the executive committee. Even assuming that the plaintiff's termination was based upon financial exigency, therefore, the defendant failed to follow its own rules and regulations.[4]

In *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981), the Court squarely held in an employment discrimination case that the statute of limitations began to run when the plaintiffs "were notified ... that a final decision had been made to terminate their appointments." One district court has concluded, therefore, that the statute begins to run when "a reasonable person in plaintiff's position would have been put on notice of defendant's official and final decision...." *Carpenter v. Board of Regents of the University of Wisconsin*, 529 F.Supp. 525, 531 (W.D.Wis.1982), *aff'd*, 728 F.2d 911 (7th Cir.1984).

A reasonable person in the plaintiff's position would not have been put on notice that the president's letter represented a "final decision" to terminate him. As pointed out above, the defendant's procedure in discharging the plaintiff was gravely flawed. Moreover, the plaintiff could have reasonably believed that the governing board, referred to in Regulation 4(c) as having the ultimate power over whether or not to discharge a faculty member, was the full board of trustees, not merely the executive committee.[5] The position of the plaintiff in this respect is bolstered by one of the defendant's bylaws which provides that, while the executive committee has

most of the powers of the board of trustees when the full board is not in session, there are certain powers that are absolutely reserved to the full board. Among those reserved powers is that of granting tenure. The plaintiff could have reasonably believed that the executive committee did not have the the power to strip him of tenure when it did not have the power to grant tenure in the first place.

### III.

Even if the president's letter constituted notice of a "final decision" as to discharge, the defendant would be estopped from asserting the limitations period. It is undisputed that the defendant did not post the notice required by 29 U.S.C. § 627 (1982), setting forth relevant information as to employees' rights under ADEA. While the First Circuit has declined to hold that the failure to post such a notice automatically tolls the limitations period, the court did hold that summary judgment was inappropriate where the plaintiff had made a "sufficiently persuasive showing that there *might* be merit to his equitable tolling claim, based on a failure to post." *Earnhardt v. Commonwealth of Puerto Rico*, 691 F.2d 69, 73 (1st Cir.1981). In this case, the plaintiff has made a sufficiently persuasive showing that the defendant's failure to post the required notice hindered his timely filing with the EEOC.

The defendant concedes its failure to post a notice but argues that tolling is unwarranted, because the plaintiff consulted two lawyers within the 300–day limitation period. *Leite v. Kennecott Copper Corp.*, 558 F.Supp. 1170, 1174 (D.Mass. 1983) (" '[E]quitable tolling is inappropriate when the plaintiff has consulted counsel during the statutory limitation period.' "), *aff'd without opinion*, 720 F.2d 658 (1st

---

4. The impropriety of the defendant's procedure would be compounded if it is determined at trial that financial exigency was not the basis of the termination. Regulation 5 requires a far more involved termination procedure for terminations where financial exigency is not a factor.

5. The identity of the governing board is important whether or not financial exigency was the basis of the plaintiff's termination. Regulation 6 gives the governing board final authority over terminations initiated under Regulation 5. The Regulations do not define the term, "governing board."

Cir.1983). In an uncontradicted affidavit, however, the plaintiff asserts that he only contacted the first lawyer for the limited purpose of determining whether or not to hire him, a decision he resolved in the negative. Such fleeting contact with a lawyer does not amount to the establishment of an attorney-client relationship for the "significant duration" necessary to render the tolling of the statute of limitations inappropriate.[6] *Jacobson v. Pitman-Moore, Inc.*, 573 F.Supp. 565, 569 (D.Minn.1983). Accordingly, this court holds that the plaintiff's contacts with the first lawyer were not of sufficient substance to render the tolling of the limitations period inappropriate.

The circumstances surrounding the plaintiff's "consulation" with the second lawyer actually weigh in favor of tolling the limitations period. In his affidavit, the plaintiff asserts that the second lawyer, whom he also contacted in May 1978, was a partner in the firm that represents the defendant. The lawyer advised the plaintiff that he could not represent him, because his partner represented the defendant, but that he would seek to act as a mediator. The plaintiff further asserts that he asked the lawyer what the time limits were for filing with the EEOC and the Massachusetts Commission Against Discrimination. The lawyer responded that he did not know, but that he would check. The 300 day limit passed in late October 1981. The lawyer finally informed the plaintiff in the beginning of November that he should file his complaint immediately and dropped the necessary forms off at the plaintiff's house. While there is no evidence that the defendant's law firm intentionally lulled the plaintiff into making the late filing, the propriety of a member of the defendant's law firm giving the plaintiff even casual legal advice is sufficiently questionable to militate against granting the defendant's summary judgment motion as to Count I on

the ground that the plaintiff did not file with the EEOC within the limitation period.

## IV.

■ The defendant has also moved for summary judgment as to the plaintiff's pendant claims, Counts II through V. As the plaintiff virtually concedes, Count IV which alleges that the defendant breached the implied warranty of good faith and fair dealing and Count V which alleges that the defendant intentionally inflicted emotional distress on the plaintiff are barred under this court's decision in *Crews v. Memorex*, 588 F.Supp. 27 (D.Mass.1984). Count III, which alleges that the plaintiff's discharge was wrongful and without just cause, must also be dismissed, since there is no tort of "wrongful discharge" under Massachusetts law.[7]

■ Plaintiff's remaining state law claim, put forward in Count II, alleges that the defendant breached the plaintiff's contractual tenure rights. The defendant asserts that this claim as well as the plaintiff's other state law claims are barred by 29 U.S.C. § 633(a) (1982) which states in pertinent part:

Nothing in this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action under this chapter such action shall supersede any State action.

On its face, § 633(a) states that, upon commencement of a federal action under ADEA, the claimant may not maintain any action based on age discrimination which he has pending before a state tribunal. The defendant, however, prefers an expansive reading, arguing that a claimant under ADEA in federal court may not join his

---

**6.** In *Leite* the plaintiffs had "retained an attorney some two years prior to the expiration of the limitations period—one who closely monitored the cases' progress." 558 F.Supp. at 1173–1174.

**7.** While the SJC held in *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977), that the employment contract in that case contained an implied covenant of good faith and fair dealing, *Fortune* established a contractual right, not a right to sue an employer for the purported tort of wrongful discharge.

pendant state law claims. In advancing this argument, the defendant contends that the requirement under ADEA that the plaintiff give notice of his intent to sue to the Secretary of Labor sixty days before bringing suit, 29 U.S.C. § 626(d) (1982), was intended to give the Secretary the opportunity to settle the dispute, and that this intent would be frustrated if the claimant were permitted to bring both his federal and state claims in the federal court.

As a preliminary matter, this court notes that Congress is fully capable of pre-empting pendant state law claims when it so desires. Just as ADEA provides employees protection from age discrimination, section 510 of the Equity Retirement Insurance Security Act (ERISA), 29 U.S.C. § 1140 (1982), protects employees from wrongful interference with their attainment of employee benefits. Unlike ADEA, however, ERISA contains an unambiguous pre-emption provision, 29 U.S.C. § 1144 (1982), which states in pertinent part: "[T]his chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title...."

While this court realizes that the interests of expediency might be served by giving the Secretary of Labor the opportunity to settle all possible aspects of an age discrimination case, it also appreciates the interest of the Commonwealth of Massachusetts in developing state law governing employment discrimination. In the absence of an unambiguous federal pre-emption statute, this court declines to encroach on Massachusetts law.

This holding is particularly appropriate with respect to Count II of the plaintiff's complaint, his surviving state claim, which alleges that the defendant breached a contract it entered into with him when it granted him tenure. Age discrimination is irrelevant to this claim. At trial, the issues will be whether the contract existed and, if so, whether it was breached.

### V.

 The plaintiff has filed a cross-motion for summary judgment on the grounds that the defendant did not follow the proper procedure in terminating him, and that the defendant's justification for the termination of financial exigency is "totally unsupported by the evidence and invalid as a matter of law." While this court has found that the procedure employed by the defendant was flawed, this finding in and of itself is not enough to entitle the plaintiff to summary judgment. Furthermore, this court finds that there is a genuine issue of fact as to whether the plaintiff's termination was motivated by the defendant's financial exigency. The determination of this issue at trial will establish the extent to which the defendant's termination procedure was defective.

An order will issue.