Joe BATES, Plaintiff,

v.

BOARD OF REGENTS OF NORTHERN NEW MEXICO COMMUNITY COLLEGE, Dennis Salazar, Herman Wisenteiner, Herman Trujillo, Frank A. Serrano, III, Ted Trujillo, and Juan Garcia in their individual capacities, Defendants.

Civ. No. 86–563 JP.

United States District Court, D. New Mexico.

Jan. 4, 1988.

Eric Isbel–Sirotkin, Girard Street Legal Clinic, Philip B. Davis, Legal Director ACLU, Albuquerque, N.M., for plaintiff.

Stephen S. Hamilton, Montgomery & Andrews, P.A., Santa Fe, N.M., for Frank A. Serrano, III, Ted Trujillo and Juan Garcia.

M. Karen Kilgore, Albert v. Gonzales, White, Koch, Kelly & McCarthy, P.A., Santa Fe, N.M., for Board of Regents of Northern N.M. Community College, Dennis Salazar, Herman Wisenteiner and Herman Trujillo.

## MEMORANDUM OPINION AND ORDER

PARKER, District Judge.

This matter comes before the court on:

(1) a motion for summary judgment by defendants Frank Serrano, III, Juan Garcia and Ted Trujillo on the basis of the running of the applicable statute of limitations;

(2) a motion by defendants Board of Regents of Northern New Mexico Community College, and individual Regents Dennis Salazar, Herman Wisenteiner and Herman Trujillo (Regents defendants) to join in that motion for summary judgment; and

(3) a motion by plaintiff to strike the Regents defendants' motion for joinder. Having considered the motions, the memoranda and exhibits submitted by the parties in conjunction therewith, and having consulted the applicable authorities, the court concludes that the Regents defendants should be allowed to join in the motion for summary judgment and that defendants' motion for summary judgment is well-taken and should be granted. Plaintiff's motion to strike will be denied.

This is a civil rights action arising from the termination of plaintiff's employment at Northern New Mexico Community College. Plaintiff alleges that defendants' decision to terminate him for lack of funding was pretextual and, instead, resulted from plaintiff's political activities on campus and in the community regarding matters of public concern. Plaintiff seeks damages, declaratory relief and reinstatement as a result of defendants' alleged violations of his constitutionally protected rights. Defendants urge this court to grant summary judgment in their favor because the three-year statute of limitations applicable to plaintiff's action began to run on April 28, 1983, when plaintiff was notified of the termination of his employment. Defendants argue that there exist no genuine issues of material fact and that plaintiff's cause of action is barred because the statute of limitations ran on April 28, 1986, before plaintiff filed this action on May 15, 1986. Plaintiff argues, however, that his action was timely filed because the statute of limitations did not begin to run until June 13, 1983, or an even later date. Plaintiff argues that the existence of genuine issues of material fact preclude a grant of summary judgment in favor of defendants.

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to " 'secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 599, 106 S.Ct. 1348, 1363, 89 L.Ed.2d 538 (1986). Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d

884, 887 (10th Cir.1979), the burden on the moving party may be discharged by demonstrating the absence of evidence to support the nonmoving party's case. *Celotex, supra,* 477 U.S. at 324–26, 106 S.Ct. at 2554. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.,* 317–318, 106 S.Ct. at 2550. Summary judgment is warranted even when state of mind is at issue, when the party opposing the motion fails to make the requisite showing to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–57, 106 S.Ct. 2505, 2514, 91 L.Ed. 2d 202 (1986).

Plaintiff's civil rights action is brought under 42 U.S.C. § 1983. Although that statute does not contain a statute of limitations, plaintiff does not dispute that the statute of limitations applicable to this action is contained in N.M.Stat.Ann. § 37–1–8 (1978), which provides a three-year limitation period for actions "for an injury to the person or reputation of any person." *See Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). In order to determine whether defendants' motion for summary judgment should be granted, this court must decide when plaintiff's cause of action accrued.

In *Delaware State College v. Ricks,* the United States Supreme Court held that the statute of limitations began to run when the alleged discrimination occurred. 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). In that case, a discharged teacher had argued that the limitations period began to run when his contract expired, rather than when the decision to deny him tenure was made. The Supreme Court rejected plaintiff's argument, stating that the discrimination occurred and the statute of limitations began to run "at the time the tenure decision was made and communicated to Ricks." *Id.* at 258, 101 S.Ct. at 504. This decision is consistent with the many circuit court decisions holding that the statute of limitations applied to actions brought under 42 U.S.C. § 1983 begins to run "when plaintiff knows or has reason to know of the injury which is the basis of his action." *Bireline v. Seagondollar,* 567 F.2d 260, 263 (4th Cir.1977), *cert. denied,* 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979) (employment discrimination action brought by physics instructor after university denied tenure). *See also Clift v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW),* 818 F.2d 623, 630 (7th Cir.1987); *Alexopulos v. Riles,* 784 F.2d 1408, 1411 (9th Cir. 1986); *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Lavallee v. Listi,* 611 F.2d 1129, 1131 (5th Cir.1980).

The facts as developed by the parties in this case establish that from 1981 until June, 1983, plaintiff worked for Northern New Mexico Community College in the position of counselor/manpower specialist for a federal program (HEP) administered by the College. The following chronology of events surrounding plaintiff's termination is not in dispute:

September 1982   Plaintiff attended a meeting of HEP employees at which Juan Garcia, the director of the HEP program, informed them that the program had not received all the federal funding requested, and that it would be necessary to lay off one or more employees before September 30, 1983.[1]

April 28, 1983   Plaintiff received a letter from HEP Program Director Juan

---

1. Defendants assert that during the meeting plaintiff volunteered to be the person laid off. Plaintiff disputes this assertion, and contends that defendant Garcia "volunteered" him. This dispute does not create a genuine issue of material fact because a disputed fact is "material" only if it "might affect the outcome of the suit."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Defendants do not argue that the statute of limitations began to run as of the date of the September, 1982 meeting. The meeting is, however, relevant to show plaintiff's knowledge that he might eventually be terminated.

Garcia, notifying him of his layoff effective June 1, 1983.

May 20, 1983 Plaintiff received an unsigned "Notice of Termination," effective June 1, 1983, with spaces for signatures of Ted Trujillo, College Vice President, and Juan Garcia.

June 13, 1983 Plaintiff received an "Intent to Discharge" notice of layoff effective June 30, 1983, signed by Vice President Trujillo and by Juan Garcia.

June 20, 1983 Plaintiff participated in a hearing concerning his termination before the College Personnel Review Committee.

June 21, 1983 Plaintiff received a Notice of Personnel Review Committee Decision confirming his termination effective June 30, 1983.

June 29, 1983 Plaintiff received a letter from College President Frank A. Serrano, III, upholding the termination decision.

July 25, 1983 Plaintiff received a letter from the Chairman of the Board of Regents of the College denying his appeal.

Plaintiff argues that the statute could not begin to run on April 28, 1983 when he was first told that he was terminated, because the College failed to follow the procedures outlined in its Staff Handbook for termination and the April 28, 1983 letter did not conform to those procedures. The determination of when the statute of limitations begins to run is, however, analytically distinct from the question of what procedures must be followed to comply with due process requirements. "The existence of careful procedures to assure fairness in the

tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made." *Ricks, supra* 449 U.S. at 261, 101 S.Ct. at 506.[2] Because the statute of limitations begins to run when plaintiff knew or should have known that the discriminatory act has occurred, *see* cases collected at page 1491, *supra,* the court must ascertain what plaintiff knew. *See Miller v. International Telephone and Telegraph Corp.,* 755 F.2d 20, 24 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). If plaintiff's knowlege is in doubt, the court must examine the clarity of the notice provided to plaintiff, in order to determine what plaintiff should have known. *Earnhardt v. Commonwealth of Puerto Rico,* 691 F.2d 69, 71 (1st Cir.1982).[3]

Although defendants' failure to follow their own procedures for termination might be relevant in considering these two factors, such failure, even if true, is not significant in this case because the record demonstrates that plaintiff knew of his termination upon receipt of the April 28, 1983 letter from Director Juan Garcia. That letter provided:

Dear Joe:

I am sure that this letter will not be a surprise as neither will the contents be a surprise since you and I have discussed this letter previously. I verbally informed you on Tuesday, April 26, 1983 that what I had predicted had come to pass and therefore, I would have no alternative other than to "lay-you-off", effective June 1, 1983. You and I will have to follow the policies and procedures relative to annual leave.

---

**2.** At his deposition plaintiff testified, and now seems to argue, that he did not have a clear understanding of his right to a hearing following notification of his termination. That there may be an issue as to the extent of plaintiff's knowledge of his post-termination due process rights is immaterial. Under *Ricks,* the focus is on the notification of termination, not on the availability of appeal thereafter. *Ricks, supra,* 449 U.S. at 261, 101 S.Ct. at 506.

**3.** The requirement that the statute of limitations begins to run when plaintiff knew or should

have known that the discriminatory act occurred effectuates the policy of repose underlying all statutes of limitations. "[T]here are no policy grounds that would support tolling the running of the filing period beyond the point at which the employee is aware that the alleged discriminatory act has occurred. Once the employee knows of the termination, he has ample time in which to commence an action for relief." *Mull v. Arco Durethene Plastics, Inc.,* 784 F.2d 284, 291 (7th Cir.1986).

You and I never did discuss "a hearing" as the RIF policy requires, I assumed all along you would not hold me to any hearings. Please do respond to this.

Do consider this an official notice. Lastly, I will contact Mr. Ted Trujillo, Personnel Officer, and I assume that if he feels that this letter is not official and due notice, I am sure that he will provide you with one.

Plaintiff argues that this letter was not "official" notice because the letter suggests that "official" notice might be forthcoming and a later notice was provided, and also because Director Garcia did not have actual authority to terminate him. In support of his first argument, plaintiff relies on the last sentence of the letter, and the fact that Mr. Trujillo subsequently issued an "Intent to Discharge" notice on June 13, 1983. The April 28, 1983 letter stated, however, that it was "official" notice. Furthermore, plaintiff testified at his deposition that he considered the April 28, 1983 letter to be "official" notice: "It wasn't really until I officially got notified that, 'Hey, it's—the money's run out. You're gone.' And that's, you know—the firm notification, or whatever—it came about the time that I received the—the letter on April 28th." ·(Deposition of Joe Bates, at 273, Exhibit 3, Plaintiff's Response to Defendants' Motion for Summary Judgment on Statute of Limitations Grounds.) Plaintiff also referred to the April 28, 1983 letter in response to questions at his deposition as follows:

Q. But you determined that it was the end of your employment with Northern New Mexico Community College—

MR. DAVIS: Same objection.

Q. (By Mr. Hamilton)—didn't you?

A. You're talking about the time they handed me this letter?

Q. Yes.

A. That's probably the only thought that was in my mind right then.

Id. at 276–77. That plaintiff's knowledge of his termination dated from his receipt of the April 28, 1983 letter is also spelled out in his Complaint, where plaintiff alleges "In April, 1983, Plaintiff was informed of defendants' intent to terminate him due to a shortage in funding." Complaint, ¶ 19.[4]

Plaintiff also argues that the letter of April 28, 1983 was not the discriminatory act triggering the statute of limitations, because Mr. Garcia did not have final authority to terminate plaintiff's employment. As support for this argument, plaintiff relies on defendant Garcia's deposition testimony that "I recommended to Dean Valdez; that was the extent of my authority" and "I only have recommending authority, and I could just recommend up and the board could overturn me, the president could overturn me." (Deposition of Juan Garcia, at 159, 174, Exhibit 7, Plaintiff's Response to Defendants' Motion for Summary Judgment on Statute of Limitations Grounds.) In *Ricks*, however, the United States Supreme Court stated that the limitations period begins to run when the employment decision is made and communicated. *Ricks, supra.* Mr. Garcia made an unequivocal decision to terminate plaintiff's employment, as evidenced by his April 28, 1983 letter to plaintiff and also by the June 29, 1983 letter to plaintiff from College President Frank A. Serrano, III, in which President Serrano stated that "my evaluation is that Mr. Juan Garcia, HEP Director, made the appropriate decision." (Exhibit 15, Plaintiff's Response to Defendants' Motion for Summary Judgment on Statute of Limitations Grounds).

Plaintiff also argues that the June 21, 1983 decision of the Personnel Review Committee was the first "official" notice he received from a body with authority to terminate unambiguously indicating that a final termination decision had been reached. Plaintiff relies on *Leite v. Kennecott Copper Corp.*, 558 F.Supp. 1170 (D.Mass.1983), *aff'd without opinion*, 720 F.2d 658 (1st Cir.1983), for the proposition that the written "official" notice of termi-

---

**4.** This is the only date specified in the Complaint as the date of notification to plaintiff of his termination.

nation triggered the running of the statute of limitations, rather than verbal, unofficial notice provided weeks earlier. *Id.* at 1174. In *Leite,* however, the court did not hold that the statute of limitations began to run upon receipt of the written notice rather than upon receipt of oral notice. Rather, the court, in considering the defendants' motion for summary judgment, determined that the factual record before it was insufficient to support a prima facie showing that the "notice provided [i.e., the oral notice] sufficed to commence the limitations period." *Id.* Although the court denied the defendants' motion for summary judgment for this reason, it allowed the case to proceed to trial on the statute of limitations defense, stating that if the defendants successfully proved that the oral notice was sufficiently clear, "a trial on the merits can be avoided." *Id.*

The test to determine when the statute of limitations begins to run is not, therefore, when plaintiff received "official" notice, but, as discussed in the cases cited on page 1491, *supra,* when plaintiff knew that he had been terminated. In this case, plaintiff's own testimony demonstrates that event occurred on April 28, 1983, when he received the letter from Director Garcia. Furthermore, the Supreme Court has emphasized that the pendency of a grievance, "or some other method of collateral review of an employment decision, does not toll the running of the limitations period." *Id.,* 449 U.S. at 261, 101 S.Ct. at 506, citing *Electrical Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). Therefore, the availability of review of Director Garcia's decision to terminate plaintiff's employment does not toll the running of the statute of limitations and does not make Director Garcia's termination decision less "official."

In summary, the evidence is undisputed that upon his receipt of the April 28, 1983 letter from defendant Garcia, plaintiff knew his employment with the College had been terminated. In *Shockley v. Vermont State Colleges,* 793 F.2d 478 (2d Cir.1986), a case similar to this one, a faculty member appointed to a non-tenured position was denied reappointment and received a letter of non-reappointment. The plaintiff complained that this notice was ineffective because it failed to comply with the requirements of a collective bargaining agreement covering plaintiff's employment. The district court entered summary judgment in favor of defendants, and the Second Circuit Court of Appeals affirmed. The Court of Appeals reasoned that the plaintiff's assertions were "of no great import in view of the unequivocal statements made by appellant during his deposition." 793 F.2d at 482. The plaintiff had admitted at deposition that he had failed to file his claim with the Equal Employment Opportunity Commission because he had chosen to await the outcome of a formal arbitration hearing before the state Labor Relations Board. The court found that the plaintiff's state of mind during the period at issue was demonstrated clearly by his deposition testimony, and determined that the letter of non-reappointment was a "final" notice of termination within the meaning of *Ricks. Id.* The plaintiff's action was, therefore, time barred. *Id.*

Similarly, in *Mull v. Arco Durethene Plastics, Inc.,* 599 F.Supp. 158 (N.D.Ill. 1984), *aff'd,* 784 F.2d 284 (7th Cir.1986), a business executive fired orally argued that the limitations period should not have begun to run until he received a written termination notice. The district court disagreed: "That ARCO generally utilizes written termination notices does not render the oral notice given Mull per se unreasonable nor does it somehow render that earlier notice equivocal." 599 F.Supp. at 162. The Seventh Circuit Court of Appeals affirmed, stating: "Once the employee knows of the termination, he has ample time in which to commence an action for relief. This remains true even if the form of the notice is not in accordance with the employer's standard policy." 784 F.2d at 291. *See also Clift v. UAW, supra,* 818 F.2d at 630 ("any failure on the part of the Union to follow its own notice procedures is irrelevant if plaintiffs had actual knowledge or otherwise should have known of the new contract provision."); *Miller v. IT & T, supra,* 755 F.2d at 24 (oral notice sufficient

to trigger running of statute of limitations despite the fact that the company's personnel department had not yet officially voted to approve it, when the plaintiff's deposition testimony established that he knew that he was terminated after receiving oral notice); *Janikowski v. Bendix Company,* 603 F.Supp. 1284, 1289 (E.D.Mich.1985) (statute of limitations began to run from date the plaintiff admitted he knew he had been terminated).

Plaintiff in this case nevertheless attempts to distinguish the preceding cases by arguing that when college or university policies and procedures are involved, those policies and procedures must be followed in determining the propriety of notice.[5] In *Linn v. Andover Newton Theological School,* 642 F.Supp. 11 (D.Mass.1985), which involved the discharge of a teacher, the court decided that, based on the record, the defendant was not entitled to summary judgment on the ground that the suit was time barred. Nothing in the court's opinion indicates that the record being reviewed by the court contained testimony by the plaintiff or other direct evidence of the plaintiff's knowledge or state of mind regarding the notice given to him of his discharge. In the absence of such evidence, the judge in *Linn* seems to have stepped into the plaintiff's shoes and from that perspective looked at what might have had a bearing on the plaintiff's knowledge. The court examined the school's rules as they applied to the discharge of tenured faculty members to resolve the question of whether a letter from the president of the school informing the plaintiff of his discharge by the school's executive committee constituted proper notice, in light of that committee's alleged lack of authority to discharge tenured employees. *Id.* at 12. The court concluded that the plaintiff could reasonably have believed that the executive committee lacked the power to discharge

him because it did not have the authority to hire him. *Id.* at 13. In other words, it could have been inferred from the record that the plaintiff might reasonably have thought he had not been discharged. The record in *Linn* contrasts sharply with the record in this case. Here, plaintiff's deposition testimony revealed that he knew his employment was terminated when he received the April 28, 1983 letter from defendant Garcia.

Furthermore, even if plaintiff's knowledge of his termination were in doubt, which it is not, plaintiff should have known that he was terminated when he received the April 28, 1983 letter from defendant Garcia. That letter provided unequivocal notice that plaintiff's employment was terminated. The reference in the letter's last sentence to provision of further notice in the event that the Personnel Officer felt that the letter was not "official and due notice" did not render the letter's message equivocal. On the contrary, that sentence was preceded by the statement "Do consider this an official notice." The letter did not indicate that the termination decision itself was subject to change, merely that an additional notice might be provided if the personnel officer thought it necessary.

This analysis is consistent with those cases which have examined whether the notice given was sufficiently unequivocal to convey clear notice of termination. In *St. Amant v. Benoit,* 806 F.2d 1294 (5th Cir.1987), the plaintiff had requested a transfer to a different position. The Fifth Circuit Court of Appeals held that a letter denying the plaintiff's request for a transfer was not ambiguous or confusing merely because it did not explicitly state "your request is denied." *Id.* at 1298. Instead, the letter's statement that the plaintiff would remain in his current position was sufficient to put the plaintiff on notice that

---

**5.** A requirement of a more stringent standard for universities and colleges, based on these institutions' adherence to policies and procedures for termination, is belied by the decision in *Shockley v. Vermont State Colleges, supra,* in which the court found that the failure to provide reasons for termination, as required, was immaterial in light of plaintiff's admitted

knowledge that he had been terminated when he received his letter of non-reappointment. Furthermore, there is no reason to apply a different standard to colleges and universities than is applied to business entities or labor unions, which also frequently have in place policies and procedures governing employee termination. *See, e.g., Miller v. IT & T, supra,* 755 F.2d at 24.

his transfer request had been denied. *Id.* Similarly, in *Cole v. CBS, Inc.*, 634 F.Supp. 1558 (S.D.N.Y.1986), the court concluded that oral notification to the plaintiff terminating his employment was phrased in unequivocal terms and was intended to be a final decision. *Id.* at 1562. *See also Earnhardt, supra*, 691 F.2d at 71–72 (letter terminating the plaintiff's employment found unambiguous; "Nothing that allegedly occurred during the period between the date of notice and the date of discharge could have lulled Earnhardt into falsely concluding that his discharge was less than final."). In this case, as in *St. Amant, Cole*, and *Earnhardt*, defendant Garcia's April 28, 1983 letter provided unequivocal notice of plaintiff's termination.

This court finds that defendants have established the absence of a genuine issue of material fact that plaintiff knew and should have known on April 28, 1983 that his employment was terminated. Therefore, the three-year statute of limitations contained in N.M.Stat.Ann. § 37–1–8 (1978) began to run on April 28, 1983. Plaintiff's Complaint would have been timely if it had been filed on or before April 28, 1986.[6] Since plaintiff's Complaint was not filed until May 15, 1986 it was not timely and defendants' motion for summary judgment on the basis that plaintiff's action is time-barred is well-taken and will be granted.

 Defendants Board of Regents of Northern New Mexico Community College, Dennis Salazar, Herman Wisenteiner, and Herman Trujillo urge this court to grant their motion to join in their co-defendants' motion for summary judgment based on the statute of limitations. The Regents defendants filed this motion on July 9, 1987, two days after the expiration of the deadline for filing pretrial motions. Plaintiff argues that because the Regents defendants' motion was untimely filed, and because they failed to file a brief in support of their motion, this court should strike their motion for joinder. Plaintiff does not dispute that the Regents defendants asserted the defense of the statute of

limitations in the Pretrial Order filed with the court on August 11, 1987. The Pretrial Order provides that it will "hereafter control the course of the trial." The court finds that plaintiff has been on notice that these defendants asserted that the statute of limitations barred plaintiff's action, and will exercise its discretion by granting the Regents defendants' motion to join in the other defendants' motion for summary judgment. Plaintiff's motion to strike will be denied.

Now, Therefore,

IT IS BY THE COURT ORDERED that the motion of defendants Board of Regents, Dennis Salazar, Herman Wisenteiner, and Herman Trujillo to join in the motion for summary judgment on statute of limitations grounds filed by defendants Serrano, Garcia and Trujillo is granted, and plaintiff's motion to strike is denied.

IT IS FURTHER ORDERED that the motion for summary judgment on statute of limitations grounds is granted.

---

6. Plaintiff does not argue that the statute should be equitably tolled, or that defendants should be

estopped from asserting the defense of the statute of limitations in this case.