**James Robert COLE, Plaintiff,**

v.

**CBS, INC., Defendant.**

**No. 83 Civ. 2253 (JES).**

United States District Court,
S.D. New York.

May 27, 1986.

Whitman & Ransom, New York City, for plaintiff; Louis Armand DeJoie, of counsel.

Graubard, Moskovitz, McGoldrick, Dannett & Horowitz, New York City, for defendant; Robert I. Gosseen, Douglas E. Rowe, of counsel.

SPRIZZO, District Judge:

The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

## BACKGROUND

Plaintiff James Robert Cole alleges that the defendant, CBS, Inc. ("CBS"), his former employer, violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634, as amended (1983), in discharging him. *See* Complaint ("Compl.") at ¶ 1. Specifically, Cole presents two claims, each under a separate provision of the ADEA.[1] First, Cole claims

---

1. Cole properly brought his action under the ADEA. Section 631(a) provides: "The prohibi-

that CBS willfully discharged him solely on the basis of age in violation of 29 U.S.C. § 623(a). *See* Compl. at ¶ 16. Second, Cole alleges that CBS violated 29 U.S.C. § 623(d) by supplying false information to the New York State Unemployment Insurance Division ("NYSUID") "to retaliate against [him] for his opposition to the discriminatory acts" and "his expressed reservation of the right to file an age discrimination claim against CBS with the Equal Employment Opportunity Commission ["EEOC"] and the New York State Division of Human Rights." *See* Compl. at ¶¶ 1, 13.

CBS seeks dismissal of Cole's age discrimination claim on the ground that it is time-barred under 29 U.S.C. § 626(d). A hearing addressing this issue was held before this Court, *see* Tr. at 57, and post-hearing memoranda were filed.[2] The retaliation claim, however, was not adequately addressed by either party. Therefore, the Court, in the interest of fairness, will not address the retaliation claim at this time.

### FACTS

Cole was employed by CBS for twenty-seven years. *See* Compl. at ¶ 7; Answer ("Ans.") at ¶ 7; Tr. at 8 (Cole's testimony). From February of 1969 through July 14, 1980, he served as the vice-president and chief operating officer ("VP/CEO") of the CBS Radio Division—CBS-Owned FM Stations ("CBS–FM"). *See* Compl. at ¶ 7; Ans. at ¶ 7.

Cole alleges that on July 14, 1980, J. William Grimes, the executive vice-president of the CBS Radio Division and Cole's immediate superior, *see* Tr. at 2–3, informed him that he was being replaced with a "younger guy." *See* Compl. at ¶ 8. More specifically, plaintiff alleges that Grimes told him, "I'm going to take you

out of the responsibility of running the FM group and put a younger man in the job to kick ass." *See* Tr. at 3. CBS denies that Grimes made the statement. *See* Consent Pre-Trial Order ("PTO") at 9.[3] Additionally, plaintiff alleges that Grimes informed Cole that he would be substantially stripped of his responsibility, but could remain on the payroll through April 2, 1982, his fifty-fifth birthday.[4] *See* Compl. at ¶ 8. Grimes presented Cole with a schedule of options concerning his retirement benefits. *See* Tr. at 4, 28–29; Defendant's Exhibit ("Def.Ex.") 5. Cole testified that Grimes encouraged him to explore possible employment in *"other divisions* of [CBS] in the hopes of staying with CBS past [his] 55th birthday." *See* Tr. at 3, 6 (emphasis added).

Cole alleges and CBS does not deny that CBS offered Cole the use of an office and telephone until his fifty-fifth birthday. *See* Compl. at ¶ 8; Tr. at 30. CBS alleges that Cole remained on the payroll through April 30, 1982, the month in which Cole turned fifty-five years of age. *See* Ans. at ¶ 8; Def. Ex. 5; Tr. at 63. From July 14, 1980, through April 2, 1982, Cole performed no further duties for CBS. *See* Tr. at 18–19. Cole made use of office space and facilities provided by CBS until December 31, 1981, but removed himself from his executive office at CBS on July 14, 1980. *See id.* at 14, 18–19. Robert F. Hyland, III, who was in his mid-thirties, filled Cole's position as vice-president on November 24, 1980. *See* Compl. at ¶ 10; Tr. at 34; *see also* PTO at 9.

After notification of his termination, Cole alleges that he entered into "two sets of negotiations with CBS in an attempt to retain his employment after his fifty-fifth birthday." *See* Compl. at ¶ 9. Cole alleges

---

tions in this chapter shall be limited to individuals who are at least 40 years of age but less than 70 years of age." Cole was 53 years of age when he was notified of his termination, and 55 years of age when he left CBS' employ. *See* Transcript of the November 28, 1983 hearing ("Tr.") at 3.

**2.** Defendant filed a memorandum of law. Counsel for plaintiff submitted a letter, dated

December 5, 1983 ("Pl. 12/5/83 Ltr."), which the Court has since filed.

**3.** The Court did not have the benefit of Grimes' live testimony at the hearing.

**4.** At the hearing, Cole testified that he believed CBS had a policy of early retirement at age fifty-five. *See* Tr. at 4, 7. Defendant's Exhibit 5 seems to confirm this. *See* Def. Ex. 5.

that CBS was "unwilling to alter its intention to replace him with a younger person." *Id.* Additionally, Cole spoke with several people within CBS, including the Radio Division and other divisions, concerning employment *elsewhere* within the company. *See* Tr. at 9–14.[5] Although he did not secure a position, Cole conceded at trial that no one within CBS discouraged him from seeking employment in a position other than his former position within the company. *See id.*

On April 13, 1982, Cole filed charges with the EEOC, alleging that his termination was based solely on his age. *See* Compl. at ¶ 4; Def. Ex. 1. On March 23, 1983, Cole commenced this action against CBS, asserting jurisdiction under 29 U.S.C. § 626(c) and 28 U.S.C. § 1331. *See* Compl. at ¶ 3. Cole seeks damages for lost earnings (including bonuses, pension, and other benefits), liquidated damages provided by section 626(b), and costs and attorney's fees. *See* Compl. at 5–6. Venue is properly asserted, and is not disputed. *See* PTO at 2.

## DISCUSSION

### I. STATUTE OF LIMITATIONS

The issue before the Court is whether plaintiff has filed this action "within 300 days after the alleged unlawful practice occurred...." *See* 29 U.S.C. § 626(d)(2).[6] The parties disagree as to the date on which the alleged unlawful practice occurred. CBS contends that Cole's cause of action accrued on July 14, 1980, the day Grimes terminated Cole's vice-presidency. *See* PHM, *supra* note 6, at 4. Cole argues that his cause of action accrued on April 2, 1982, his fifty-fifth birthday, which was the day he finally left CBS' employ, because the notice of discharge given on July 14, 1980, was not clear and unequivocal. *See, e.g.,* PTO at 5; *see also* Pl. 12/5/83 Ltr., *supra* note 2, at 6.

■ The Supreme Court has held that the timeliness of a discrimination claim is measured from the time the employee receives a reasonable notice of a final decision regarding termination, not from when the actual discharge takes place. *See Chardon v. Fernandez,* 454 U.S. 6, 8, 102

---

**5.** More particularly, Cole spoke with Sam Digges, who was president of CBS Radio Division. Digges suggested to Cole that he travel to the West Coast and "with [his] contacts out there see if [he] couldn't find something that way." *See* Tr. at 11, 50–51. Prior to Cole's trip to the West Coast in the spring of 1981, CBS agreed to pay, and in fact did pay for Cole's air fare and hotel accommodations. *See id.* at 12. Additionally, James Rosenfield, president of CBS Television Network, offered Cole a job as a television salesman, but believed that Cole was overqualified for the position. *See id.* at 10. Cole rejected the offer, ostensibly for that reason. *See id.* at 10–11. Most significantly, there were no discussions between Cole and CBS officials concerning reinstatement to his former position as VP/CEO at CBS–FM. *See, e.g.,* Tr. at 21–22.

**6.** To commence an ADEA action, the employee must meet two time requirements. First, an employee must file a complaint no earlier than sixty days after a charge of unlawful discrimination has been filed with the EEOC. *See* 29 U.S.C. § 626(d). Second, the charge with the EEOC must be filed "within 180 days after the alleged unlawful practice occurred," *see* 29 U.S.C. § 626(d)(1), or, "in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or

within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier." *See* U.S.C. § 626(d)(2).

29 U.S.C. § 633(b) applies when the "alleged unlawful practice occur[s] in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice...." *See* 29 U.S.C. § 633(b). New York's Human Rights Law expressly prohibits age discrimination. *See* N.Y. Exec.Law § 296 (McKinney 1982). Further, the statute creates a "division of human rights" within the executive department, which is authorized, *inter alia,* to "investigate and pass upon complaints," *see* N.Y.Exec. Law § 295(6), and "endeavor to eliminate [any] unlawful discriminatory practice by conference, conciliation and persuasion." *See* N.Y.Exec.Law § 297(3)(a). Thus, 29 U.S.C. § 633(b) applies in the instant action.

The parties correctly agree that the first time requirement has been met. *See* Compl. at ¶ 4; CBS' Post-Hearing Memorandum ("PHM") at 6, n. 7. Cole filed charges with the EEOC on April 13, 1982. In accordance with section 626(d), Cole filed his complaint with this Court on March 23, 1983, more than sixty days after the date of filing with the EEOC.

S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (per curiam) (employee's "reasonable notice" of discharge cannot extend the filing period), *reh'g denied*, 454 U.S. 1166, 102 S.Ct. 1042, 71 L.Ed.2d 322 (1982); *Delaware State College v. Ricks*, 449 U.S. 250, 257–58, 101 S.Ct. 498, 503–04, 66 L.Ed.2d 431 (1980) (the "[m]ere continuity of employment ... is insufficient to prolong the life of a cause of action for employment discrimination") (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977)).

*Ricks* and *Chardon* were not age discrimination cases,[7] but their holdings have been applied to ADEA claims. *See, e.g., O'Malley v. GTE Service Corp.*, 758 F.2d 818, 820 (2d Cir.1985); *Miller v. Int'l Telephone and Telegraph Corp.*, 755 F.2d 20, 23 (2d Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 148, 88 L.Ed.2d 122, *reh'g denied*, — U.S. —, 106 S.Ct. 552, 88 L.Ed.2d 479 (1985); *Pfister v. Allied Corp.*, 539 F.Supp. 224, 226 (S.D.N.Y.1982).

■ The Court concludes that the oral notification received by the plaintiff from his supervisor on July 14, 1980 was phrased in unequivocal terms and was intended to be a final decision concerning the plaintiff's employment as VP/CEO at CBS–FM.[8] *Cf. Chardon, supra*, 454 U.S. at 8, 102 S.Ct. at 29; *Ricks, supra*, 449 U.S. at 257–58, 101 S.Ct. at 503–04. Therefore, the statute of limitations began to run on July 14, 1980. The plaintiff's discrimination charge was filed with the EEOC on April 13, 1982, approximately 600 days after the alleged unlawful employment practice occurred. Accordingly, under 29 U.S.C.

§ 626(d)(2), the plaintiff's cause of action is time-barred. *Cf. Chardon, supra*, 454 U.S. at 8, 102 S.Ct. at 29; *Ricks, supra*, 449 U.S. at 257–62, 101 S.Ct. at 503–06.

Plaintiff seeks to distinguish both *Ricks* and *Chardon*. Cole asserts that while termination of plaintiff's employment in *Ricks* was a " 'delayed, but inevitable' consequence of the denial of tenure," *see* Pl. 12/5/83 Ltr., *supra*, at 3 (citing *Ricks*, 449 U.S. at 258, 101 S.Ct. at 504), CBS' termination of *his* employment was not inevitable, but "contingent," because he was given the opportunity to remain at CBS if he found other employment within the company. *See id.* This argument is not persuasive, in light of Cole's own testimony. *See, e.g.,* Tr. at 3, 21, 22, 27.

Grimes' oral notice to Cole was certainly sufficient to trigger the applicable limitations period; it clearly and unambiguously indicated that CBS had reached a final termination decision *with respect to Cole and his position as VP/CEO in its Radio Division. Cf. Leite v. Kennecott Copper Corp.*, 558 F.Supp. 1170, 1174 (D.Mass.), *aff'd*, 720 F.2d 658 (1st Cir.1983).[9] The fact that CBS held out the hope that he might be able to obtain *other* employment at CBS did not in any way detract from the unequivocal nature of his termination from that position.

Cole's reliance upon *Verschuuren v. Equitable Life Assur. Soc. of U.S.*, 554 F.Supp. 1188 (S.D.N.Y.1983), is misplaced. In that case, the notice of termination was contingent upon no other position being found for plaintiff. *See Verschuuren, su-*

---

7. *Ricks* was brought pursuant to Title VII and 42 U.S.C. § 1981. *See Ricks, supra*, 449 U.S. at 254, 101 S.Ct. at 502. *Chardon* was brought pursuant to 42 U.S.C. § 1983. *See Chardon, supra*, 454 U.S. at 7, 102 S.Ct. at 28.

8. The plaintiff adduced no evidence of any unlawful employment practices which occurred after July 14, 1980. In fact, the plaintiff's only allegation of discrimination in his discharge as VP/CEO at CBS–FM, of which he was given notice on July 14, 1980 and which, under the *Chardon-Ricks* doctrine, commenced the running of the limitations period. *Cf. Chardon, supra*, 454 U.S. at 8, 102 S.Ct. at 29; *Ricks, supra*, 449 U.S. at 258, 101 S.Ct. at 504.

9. *Leite, supra*, upon which plaintiff relies, does not support his argument. In fact, the *Leite* decision expressly upheld the *Chardon-Ricks* rule as "equally applicable to age discrimination suits," *see Leite, supra*, 558 F.Supp. at 1172, (citing *Pfister, supra*, 539 F.Supp. at 226), and granted summary judgment dismissing the claims of those plaintiffs whose claims were filed beyond the applicable three-year period for willful violations of the ADEA and who failed to demonstrate sufficient grounds for equitable modification of the limitations period. *See Leite, supra*, 558 F.Supp. at 1172–74.

*pra,* 554 F.Supp. at 1190, 1190 n. 1. Here, it was not. Nor is it of consequence that here, unlike *Verschuuren,* the notice of termination was oral, not written. *See Leite, supra,* 558 F.Supp. at 1174 (and cases cited therein). It is also significant that in *Verschuuren,* the termination letter stated:

> "Please be assured that *every reasonable effort will be made to place you in a position elsewhere in the Equitable between now and September 8, 1981.* Beginning immediately the services of ... an experienced career counseling firm, will be available to you."

*See id.* (emphasis added).

CBS undertook no such obligation in this case. Indeed, plaintiff in the instant case alleges only that CBS "encouraged [Cole] to look into other divisions of [CBS]...." *See* Tr. at 3, 8–9. Plaintiff himself indicated that CBS did not actively search for another position for Cole or suggest to Cole that it would do so. *See, e.g., id.* at 21. In fact, Cole testified that it was his own responsibility to conduct a search for other employment. *See id.*

The conclusion that Cole's action is time-barred is also consistent with several decisions of this Court. *See, e.g., Sprott v. Avon Products, Inc.,* 596 F.Supp. 178, 181 (S.D.N.Y.1984);[10] *Lutz v. Association Films, Inc.,* 552 F.Supp. 985, 987–88 (S.D.N.Y.1982); *see also Pfister, supra,* 539 F.Supp. at 227 (employee's claims of non-willful ADEA violations held barred by the statute of limitations which began to run on the date the employee was notified that he would be officially terminated approximately one year later); *Boothe v. New York Ass'n for the Blind,* 524 F.Supp. 736, 739 (S.D.N.Y.1981) (employee's action under the ADEA dismissed for filing 30 days late un-

less employee could allege factual circumstances to toll the statutory period); *compare EEOC v. Home Ins. Co.,* 553 F.Supp. 704, 711–13 (S.D.N.Y.1982) (because of the employer's continuing discriminatory practice, the relevant date for each employee with respect to the timeliness of his claim was his date of actual termination).

## II. EQUITABLE MODIFICATION

Cole contends that if this Court determines, as it has in Part I of this Discussion, *supra,* that, under 29 U.S.C. § 626(d), his cause of action accrued on July 14, 1980, then the limitations period should be equitably modified. *See* Pl. 12/5/83 Ltr., *supra* note 2, at 5. Cole argues that his case is appropriate for equitable modification since "the encouraging possibility that [he] would not be terminated was repeatedly dangled before him." *See id.* Additionally, Cole maintains that the "representations of CBS, through Grimes and Digges in particular, *actively* induced [him] to believe that he should channel his time and energy into a search for another position within [CBS]." *See id.* at 6 (emphasis in original).

The Supreme Court has held that Congress did not intend that timely filing of a discrimination charge with the EEOC be a "jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). However, plaintiff has not established sufficient grounds for the equitable extension of the ADEA limitations period by concepts of either tolling or estoppel.

The doctrine of equitable tolling is based on the general principle that a statute of limitations should not run against a plaintiff who is unaware of his cause of action.

---

**10.** In fact, *Sprott* is particularly apposite since Cole also contacted an attorney shortly after his meeting with Grimes on July 14, 1980. *See* Tr. at 22. Soon after his July 14, 1980 conversation with Grimes, Cole consulted William Greene. *See id.* Greene had once been employed by CBS in its law department and later in the Radio Division. *See id.* at 38. At the time Cole consulted Greene, he was in independent practice. *See id.* In December of 1981, Cole retained other counsel, who began to discuss with Charles Bates Cole's concerns about a "more formal type of job placement counseling" and "whether there was any aspect of the financial package on termination that CBS would be willing to reconsider." *See id.* at 43; *see also* Defendant's Exhibits 6–9. This course of action would certainly blunt plaintiff's argument for equitable tolling. *See* Part II *infra.*

*See Dillman v. Combustion Engineering, Inc.,* 784 F.2d 57, 60 (2d Cir.1986) (citing *Cerbone v. Int'l. Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985)). The Second Circuit has permitted tolling of the time limitations controlling the filing of EEOC charges in age discrimination cases. *See, e.g., O'Malley, supra,* 758 F.2d at 820; *Miller, supra,* 755 F.2d at 24.

■ The time periods, however, are not tolled "pending the employee's realization that the [employer's] conduct was discriminatory unless the employee was actively misled by his employer," or the employee was restricted from exercising his rights in "some extraordinary way." *See Cerbone, supra,* 768 F.2d at 49; *Miller, supra,* 755 F.2d at 24 (citing *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 109 (2d Cir.1978)). Moreover, the Second Circuit has stated that an "extraordinary" circumstance allowing equitable tolling "might exist if the employee could show that it would have been impossible for a reasonably prudent person to learn that his discharge was discriminatory." *See Miller, supra,* 755 F.2d at 24.

■ Plaintiff in the instant case does not meet this standard. Cole has failed to adduce any evidence showing that it was "impossible" for him to recognize that his discharge was discriminatory. *Cf. id.* at 24–25. The plaintiff testified that his supervisor specifically informed him he was being replaced by a "younger man." *See* Tr. at 3. This case is therefore very similar to *Cerbone,* where plaintiff employee, a manager, was forced to retire because, as his supervisor explained, the Union had "very young business agents who want to be managers." *See Cerbone, supra,* 768 F.2d at 48. In that case, the Second Circuit, in refusing to toll the ADEA limitations period, held that statements of this type "plainly revealed" the employer's allegedly discriminatory acts to the plaintiff. *See id.* at 49.

In addition, Cole testified that a short time after his meeting with his supervisor on July 14, 1980, he retained counsel to represent him. *See* Tr. at 22. The Second Circuit has held that equitable tolling is improper where the plaintiff was represented by counsel during the applicable statutory limitations period. *See Keyse v. California Texas Oil Corp.,* 590 F.2d 45, 47 (2d Cir.1978) (per curiam) (Title VII); *Smith, supra,* 571 F.2d at 109–10 (Title VII); *see also Edwards v. Kaiser Alum. & Chem. Sales, Inc.,* 515 F.2d 1195, 1200 n. 8 (5th Cir.1975) (ADEA). Since the plaintiff's counsel is presumptively aware of his client's legal recourse, the plaintiff is deemed to have "access to a means of acquiring knowledge of his rights and responsibilities." *See Smith, supra,* 571 F.2d at 109; *see also Downie v. Electric Boat Div.,* 504 F.Supp. 1082, 1087 (D.Conn. 1980) (ADEA); *accord, Leite, supra,* 558 F.Supp. at 1174 (plaintiff who retained counsel had "constructive knowledge" of the ADEA filing requirements).

Furthermore, Cole has failed to adduce any evidence to support an allegation that CBS actively misled him with respect to the existence of his ADEA claim. As discussed *supra,* Cole received a notice of termination that was clear and unequivocal on July 14, 1980. Based on Cole's own testimony, *see, e.g.,* Tr. at 3, 21, 27–28, the discharge can reasonably be said to have made the plaintiff aware of a possible age discrimination claim. Although CBS executives encouraged Cole to explore other employment opportunities within the company, there was never a change in CBS' unequivocal decision to terminate Cole. Accordingly, the Court holds that on the instant record there are no sufficient grounds for tolling the statute of limitations. *Cf. Dillman, supra,* 784 F.2d at 60; *Cerbone, supra,* 768 F.2d at 49.

■ Nor can plaintiff properly rely upon concepts of equitable estoppel. Equitable estoppel applies in age discrimination cases where the plaintiff knew of the existence of his cause of action, but the employer is responsible for the employee's delay in filing a charge with the EEOC. *See Dillman, supra,* 784 F.2d at 60–61; *Cerbone, supra,* 768 F.2d at 49–50.[11] In

---

**11.** Equitable estoppel has been invoked in cases where an employer has "misrepresented the

the present case, there is neither an allegation nor any evidence of bad faith or deceitful actions sufficient to warrant equitable estoppel of the statute of limitations defense. *Cf. Pfister, supra,* 539 F.Supp. at 227. In the instant case, it was the employee (Cole), *not* the employer, who initiated the negotiations with respect to further employment. Additionally, the discussions between the parties never concerned Cole's reinstatement to his former position as vice-president. *See, e.g.,* Tr. at 21–23, 39, 43, 47.

Furthermore, the Court must be careful not to construe the estoppel rule so as to deter an employer from seeking to ameliorate the effects of his decision to discharge an employee. *See Dillman, supra,* 784 F.2d at 61 (and cases cited therein). Grimes stated in a confidential memorandum, dated August 4, 1980, that "[o]ne of the reasons that it was decided to permit [Cole] to remain an employee [was] because of heavy family medical costs." *See* Def. Ex. 5. Indeed, it would be a unique distortion of equitable principles were this Court to penalize defendant for continuing plaintiff on its payroll and encouraging him in his search for another position. *See Pettit v. Sears, Roebuck & Co.,* 32 Fair Empl. Prac.Cas. (BNA) 1867, 1869 (E.D.Pa.1982) (the fact that defendant continued plaintiff's salary and attempted to help him find another job does not extend the ADEA filing requirements); *cf. Leite, supra,* 558 F.Supp. at 1174 (stating the reluctance of the court to "penalize the defendant for its seemingly benevolent desire to facilitate plaintiff's search for alternative employment by providing early ... notice of termination").

### CONCLUSION

For all the foregoing reasons, plaintiff's age discrimination claim under 29 U.S.C. § 623(a) is time-barred. Judgment is

granted to defendant with respect to plaintiff's discrimination claim only; to the extent that defendant has moved to dismiss plaintiff's retaliation claim, that motion is denied without prejudice. All parties shall appear before this Court for a Pre-Trial Conference on June 20, 1986, at 10:00 a.m.

It is SO ORDERED.

---

length of the limitations period or in some other way 'lulled the plaintiff into believing that it was not necessary for him to commence litigation.'" *See Dillman, supra,* 784 F.2d at 61 (quoting *Cerbone, supra,* 768 F.2d at 50). The doctrine has frequently been applied in situations where the employee has failed to timely file his EEOC

claim, reasonably relying on the employer's promise to settle the discrimination claim by reinstatement. *See, e.g., Ott v. Midland-Ross Corp.,* 600 F.2d 24, 28–31 (6th Cir.1979); *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 193 (3d Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978).