**C. Donald SHARPE, Plaintiff,**

v.

**AMERICAN EXPRESS COMPANY, Defendant.**

**No. 85 Civ. 7058 (SWK).**

United States District Court, S.D. New York.

June 29, 1988.

Vladeck, Waldman, Elias & Engelhard, P.C. by Joseph J. Garcia, New York City, for plaintiff.

Proskauer, Rose, Goetz & Mendelsohn by Bettina B. Plevan, Elizabeth A. Alcorn, New York City, for defendant.

KRAM, District Judge.

Plaintiff Donald Sharpe filed this employment discrimination suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), against his one-time employer, American Express Company ("American Express"). This case is presently before the Court on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed below, defendant's motion for summary judgment on the statute of limitations question is denied.

## BACKGROUND

Defendant employed plaintiff, a black male, from 1966 until his termination on September 25, 1981. Plaintiff's most recent position with American Express was in the capacity of District Travel Manager, a position he had maintained from 1976[1] until his termination on September 25, 1981. In early June, 1981, American Express management informed plaintiff orally that his travel service would be closed and his position as manager would be terminated not later than September 30, 1981, and further that his employment with the defendant would end at that time unless he found another position with defendant. At

that time defendant also informed him orally that American Express would assist him in finding another position. Plaintiff claims that Steven Kenady, who was director of employment and employee relations at American Express at that time, told him in early June on at least two occasions that he, Kenady, would institute an internal search in an effort to find plaintiff with another position with American Express. Sharpe contends that Kenady told him that a job would probably be available in a less competitive position, and Sharpe stated that he would be willing to accept such a position. Sharpe also contends that no mention was made of severance payments at that time. Kenady acknowledges that he told Sharpe that he would assist him in locating another position at American Express and would conduct an internal search for a suitable position within the company. Kenady also states that he told Sharpe that American Express would, as of June 1, provide him with outplacement counseling and advised Sharpe to review internal company job postings advertising openings within the company. Kenady claims, however, that he discussed severance payments with Sharpe at this time.

On September 16, 1981 plaintiff again met with Kenady and other American Express officials. At this time, plaintiff was informed that his employment with American Express would definitely be terminated on September 25, 1981, that no further efforts would be made to find Sharpe a position within American Express, and arrangements for his severance payments were made. Following this conversation Kenady sent a letter to plaintiff on September 21, 1981, confirming the conversation. Severance payments were to begin on September 28. Sharpe claims that on September 23, Hugh Gallagher, vice president for American Express's eastern region travel division, asked Sharpe if he would consider a transfer to a records facility in New Jersey. Gallagher remembers meeting with Sharpe on that date, but does not

---

1. Plaintiff's complaint states that he was promoted in 1976 to travel manager, whereas defendant's Rule 3(g) statement states that he began this position in 1977. The dates are not material.

recall making any such offer, but instead claims that Sharpe had asked if a job might be available there. Two days later, on September 25, Sharpe states that William Allyn, an American Express official, informed him that he would not be placed in a new position and that American Express was terminating his employment as of that date.

Plaintiff filed a *pro se* claim with the Equal Opportunity Employment Commission ("EEOC") on May 14, 1982. The EEOC forwarded the complaint to the New York Division of Human Rights on June 7, 1982. Both the EEOC and the New York Division of Human Rights decided not to take action on plaintiff's claim, and the EEOC issued a right to sue letter on June 5, 1985. Plaintiff filed this claim that same year. The complaint alleges that from 1973 until his termination in 1981 plaintiff was denied the same terms and conditions of employment as was given to white employees. Plaintiff also alleges that the decision to close his office and to terminate his employment was racially motivated. He also claims that defendant did not make a good faith effort to find him alternate employment within the company because he was black.

## DISCUSSION

### Standards for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold,*

*Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).[2] The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Rule 56(e). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (interpreting the "genuineness" requirement).

### Requirements for Timely Filing

Defendant argues that summary judgment should be granted because Sharpe's filing with the EEOC on May 14, 1982 does not fall within the statutorily prescribed filing period. Title VII, 42 U.S.C. § 2000e–5(e), requires that all claims for employment discrimination be filed with the EEOC within 180 days from the date the alleged unlawful employment discrimination practice occurred. An exception to this requirement allows local agencies in states which have them, known as deferral

---

**2.** The moving party may rely on the evidence in the record to point out the absence of genuine issues of material fact. *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553. The moving party does not have the burden of providing evidence to negate the non-moving party's claims. *Id.* As the Supreme Court recently noted, "whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

states, the chance to review discrimination claims and act on them before the EEOC proceeds. In such cases the statute requires the claimant to file with the EEOC within a total of 300 days, or 30 days after receiving notice that the state agency has terminated proceedings, whichever is earlier.

A separate section provides that a claimant may not file a complaint with the EEOC in deferral states until 60 days after the proceedings have been commenced by the appropriate state agency unless the state has terminated its proceedings in less than the allotted sixty days. 42 U.S.C. § 2000e–5(c). If a claim is filed first with the EEOC it shall be deferred to the state agency for action for a period of 60 days. *Id.* § 2000e–5(d).

The Supreme Court has interpreted these labyrinthine rules to mean that a claimant in deferral states has 240 days within which to file with the state discrimination agency in order to preserve federal jurisdiction. *Mohasco Corp. v. Silver,* 447 U.S. 807, 825–26, 100 S.Ct. 2486, 2496–97, 65 L.Ed.2d 532 (1980). A complaint cannot be filed with the EEOC until after the state agency has had the statutorily prescribed 60–day deferral period. *Id.* at 825–826, 100 S.Ct. at 2496–2497. Complaints filed first with the EEOC may be held until the state agency terminates its proceedings or until the sixty period has passed. *Love v. Pullman,* 404 U.S. 522, 525–26, 92 S.Ct. 616, 618–19, 30 L.Ed.2d 679 (1972). The EEOC may automatically file the complaint at the end of the sixty days. *Id.* This filing deadline is akin to statutes of limitation in that its purpose is to prevent stale claims and give prompt notice to an employer of an impending action. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392–398, 102 S.Ct. 1127, 1131–1135, 71 L.Ed.2d 234 (1982). A timely filing is not jurisdictional in nature and is thus subject to waiver, estoppel and equitable tolling. *Id.* at 385, 102 S.Ct. at 1127. Since the New York State Department of Human Rights has the authority to decide employment discrimination cases, New York is a deferral state. Sharpe, therefore, had 240 days within which to file with the state agency in order to preserve federal jurisdiction. The Court must thus decide whether Sharpe's May 14, 1982 filing with the EEOC satisfied the statutory requirements.

Commencement of the Limitations Period

The limitation period commences at the time the discriminatory act occurs and not necessarily at the time the effects of that act are most keenly felt by plaintiff. *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). In *Ricks,* the limitation period began when defendants made their decision to deny tenure to plaintiff and communicated that decision to the plaintiff, not when plaintiff's employment terminated one year later. *Id.* The Court noted that "[w]here, as here, the only challenged employment practice occurs before the termination date, the limitations period necessarily begins to run before that date." *Id.* at 259, 101 S.Ct. at 505. Deciding when a given limitations period begins must be decided on a case-by-case basis. *Id.* at 258 n. 9. Reasonable notice given in advance of the actual date of termination is sufficient to commence the limitation period. *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981). The Second Circuit has noted that the period begins to run "on the date when the employee receives a definite notice of the termination, not the date upon his discharge." *Miller v. IT & T Corp.,* 755 F.2d 20, 23 (2d Cir.1985).

In this case defendant notified plaintiff orally in June, 1981 that American Express had decided to close his travel agency and eliminate his position; he was further told that his employment would be terminated by the end of September, 1981, if he could not find new employment within the company. Plaintiff argues that the limitations period should not begin in June, 1981, when the decision to close his office was communicated to him, for three reasons. First, he argues that the notice given him was equivocal and ambiguous, since American Express had promised to help him find another position within the company and had not communicated an unequivocal decision to terminate his employment until September 16, 1981. Second, he argues that defend-

ant did not make the same effort for him as it made for white employees to find alternate employment within the company. Third, plaintiff argues that the pendency of a class action, of which he was a putative class member, tolled the commencement of the limitations period until it was decided that the class would not be certified. Plaintiff also argues that his disparate treatment claim should not be dismissed as untimely since it represents a continuing violation culminating in his termination.

### 1. Notice

█ Plaintiff argues that the statute of limitations did not begin to run in June, 1981, as defendant suggests, but rather on September 16, 1981, when defendant informed plaintiff that his employment would be terminated as of September 25 and that no further efforts would be made to find him alternative employment. Plaintiff contends that the Supreme Court in both *Ricks* and *Chardon* decided that the statutory period does not begin to run until an employer communicates a "final" decision to terminate. *See Chardon, supra,* 454 U.S. at 8, 102 S.Ct. at 29 (period began when plaintiffs were notified that "a final decision had been made to terminate their appointments."). Based on this language, plaintiff argues that the period did not begin to run in June since defendant did not communicate at that time a *final* decision to terminate. Instead, the notice given in June was only provisional according to plaintiffs since defendant promised to help plaintiff search for alternate employment within American Express. For support, plaintiff points to *Verschuuren v. Equitable Life,* 554 F.Supp. 1188, 1190 (S.D.N.Y.1983) for the principle that ambiguous or equivocal notice of termination is insufficient to begin the running of the statute of limitations. In that case, the Court decided in dictum[3] that language in the termination letter to plaintiff which promised defendant's help in finding another position for plaintiff before the termination date made the termination suffi-

ciently ambiguous to avoid the running of the statute of limitations. *Id.*

In the meetings held in June with Sharpe, Kenady offered to assist Sharpe in finding other work at American Express, and as plaintiff has pointed out, it was defendant's policy to offer such assistance. Thus, like in *Verschuuren,* defendant coupled a notice of termination with certain offers to help plaintiff find alternate work with defendant. The question for this Court to decide is whether those assurances made the notice of termination so equivocal that plaintiff could not reasonably have been put on notice that he was being terminated.

In a recent age discrimination case, which has identical time requirements, this Court noted that defendant's oral notice to plaintiff that his position in the company would be terminated as of a certain future date, unless plaintiff could secure a job elsewhere in the company, was sufficient to start the running of the statute of limitations. *Cole v. CBS, Inc.,* 634 F.Supp. 1558, 1562 (S.D.N.Y.1986). Crucial to this holding was that the notice "clearly and unambiguously indicated that [defendant] CBS had reached a final termination decision *with respect to Cole and his position as VP/CEO in its Radio Division." Id.* (emphasis in original). The discriminatory act which triggered the statute of limitations was not just the decision to terminate plaintiff's employment, but instead was the decision to terminate his managerial position in the Radio Division. Thus, the Court went on to state that the "fact that CBS held out the hope that he might be able to obtain *other* employment at CBS did not in any way detract from the unequivocal nature of his termination from that position." *Id.*

This analysis aptly applies to the facts of the case before this Court. In early June, 1981, defendant notified plaintiff in no uncertain terms that his position as district manager of defendant's travel service would be terminated by a certain date. This notice is at least as clear and unequiv-

---

**3.** The Court held that the *Ricks* analysis concerning the running of the statute of limitations in civil rights cases did not apply to the facts of

the case. The discussion that followed was thus dictum.

ocal as that given in *Cole, supra.* Though defendants dangled the hope of another position within American Express before plaintiff's eyes, plaintiff was under no delusion whatsoever that his managerial position would be terminated. The alleged discriminatory act was not plaintiff's separation from the company, but his termination and subsequent demotion or separation.

■ This Court notes that the *Cole* Court attempted to distinguish *Verschuuren* on the grounds that the notice of dismissal in the latter case was conditioned on plaintiff's not being able to find a position elsewhere in the company, whereas the notice of dismissal in *Cole* was not so conditioned, even though the *Cole* plaintiff was given the opportunity to look for employment elsewhere at CBS. *Cole, supra,* 634 F.Supp. at 1563. In the case at bar, American Express did make certain promises to help Sharpe find other work at the company, but that fact in no way changes the conclusion that American Express had given plaintiff unequivocal notice that his managerial position had been terminated. Consequently, the facts of this case fall squarely within the facts of the holding in *Cole* and within the facts upon which the *Cole* court distinguished *Verschuuren.* This Court concludes that merely offering an employee assistance in finding an alternate position within the company is not enough to toll the statute of limitations when, as here, plaintiff receives clear and unequivocal notice that a final decision has been made to terminate his position, when the employer has done nothing to mislead the employee or otherwise prevent the employee from asserting his rights.[4] In particular, in this case, the plaintiff knew that his travel service position was being eliminated and that only inferior positions within American Express would be available to him, if at all. Under these circumstances, plaintiff had sufficient notice in June, 1981 to begin the running of the statute of limitations. Consequently, his filing with the EEOC over 300 days later was not timely.

## 2. Pendency of Class Action

■ Plaintiff also argues that the statute of limitations did not begin to run until it was determined that a class would not be certified in an action claiming that defendant American Express engaged in certain acts of racial discrimination. At the time plaintiff received notice of his impending discharge, a motion was pending before Judge Griesa seeking class certification in an action alleging various acts of racial discrimination by American Express. Judge Griesa denied the motion for certification on September 22, 1981. *Hall v. American Express,* No. 80 Civ. 4945, Slip op. (S.D.N.Y. September 22, 1981). Plaintiff relies on *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) for the proposition that the pendency of a class action of which plaintiff is a putative member tolls the limitations period, not only for filing suit, but also for filing a claim with the EEOC. Defendant argues that (1) the *Parker* holding does not excuse a failure to file with the EEOC, and (2) that even if it did, plaintiff's claims are materially different in time and scope than those presented in the previous action.

The *Parker* Court reaffirmed the Supreme Court's earlier holding in *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974), that the filing of a class action tolls the applicable statute of limitations for all putative class members pending a decision on class certification. 462 U.S. at 353–54, 103 S.Ct. at 2397–98. In *American Pipe,* the Court decided that the pendency of a class action tolled the statute of limitations in an antitrust action so that putative class members could intervene in the action once class certification was denied. The Court extended this logic in *Parker* to conclude that a putative class member not only could move to intervene following denial of class certification, but also could file suit separately at that time.

In *Parker,* respondent was discharged in July 1977 and filed a charge with the

---

4. If this Court were to hold otherwise, employers would be encouraged not to assist employees whose positions are terminated in finding alternate positions.

EEOC in October of that year. In November 1978, the EEOC issued a letter finding no probable cause in respondent's complaint and issued a right to sue letter. Two months earlier other former employees of respondent filed a class action against petitioner alleging various forms of racial discrimination. Class certification was ultimately denied in September 1980. Respondent filed suit on October 27, 1980, less than 90 days after the denial of the class certification, but almost two years after receiving his right to sue notice.

Title VII requires that a party file a federal action within 90 days of the issuance of a right to sue notice. 42 U.S.C. § 2000e–5(f)(1). Like the requirement of filing notice with the EEOC within 240 days, the 90–day filing requirement is not jurisdiction, but instead functions like a statute of limitations. *Parker, supra,* 462 U.S. at 349 n. 3, 103 S.Ct. at 2395 n. 3 (citations omitted). The Court reasoned that extension of the *American Pipe* analysis to allow a putative class member the right to initiate an action was necessary to maximize the economies inherent in the class action. If the filing of a class action did not toll the 90–day period, all putative class members would be encouraged to file separate actions prior to the expiration of his individual statute of limitations, creating "a needless multiplicity of actions—precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid". *Id.* at 351, 103 S.Ct. at 2396.

The Court also reasoned that limiting tolling to intervenors would be inconsistent with the Court's decision in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), which held that Rule 23 required individual notice to absent class members so they would have the option of "opting out" of the class and preserve their right to institute their own lawsuit, *id.* at 176, 94 S.Ct. at 2152, since the class member would not be able to bring a separate action if the statute of limitations had run while the class action was pending. *Parker, supra,* 462 U.S. at 351, 103 S.Ct. at 2396. The *Parker* Court noted that the *Eisen* Court had recognized this difficulty

and decided that the opportunity to opt out remained meaningful since the statute of limitations would be tolled while the class action was pending. *Id.* at 352, 103 S.Ct. at 2396 (citing *Eisen, supra,* 417 U.S. at 176 n. 13, 94 S.Ct. at 2152 n. 13). The Court concluded that "the *Eisen* Court necessarily read *American Pipe* as we read it today, to apply to class members who choose to file separate suits." *Id.*

This Court concludes that the reasoning which made it appropriate to extend the *American Pipe* doctrine to class members who wanted to file individual actions also makes it appropriate to extend the tolling doctrine to putative class members who want to begin the administrative process by filing a claim with the EEOC. As noted above, like the 90–day period following a notice of right to sue letter, the 240–day period following the discriminatory act is a limitations period subject to equitable modification. *See Zipes, supra,* 455 U.S. at 393, 102 S.Ct. at 1132. As the *Parker* Court noted, "[l]imitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights, . . .[citations omitted], but these ends are met when a class action is commenced." 462 U.S. at 352, 103 S.Ct. at 2397. Applying the tolling rule to the filing of administrative claims will have the same salutary effect as exists for the filing of lawsuits. In both cases, tolling the statute of limitations during the pendency of a class action will avoid encouraging all putative class members to file separate claims with the EEOC and the respective state agencies in deferral states.

Furthermore, this Court finds that the *American Pipe* doctrine should be extended to cover the filing of administrative claims so that the "opting out" rights may be exercised. Just as in *Parker,* it is true in this case that "a class member would be unable to 'press his claim separately' if the limitations period had expired while the class action was pending." 462 U.S. at 351, 103 S.Ct. at 2396. Defendant's argument that application of the tolling rule in this case would stymie the salutary purposes of the EEOC filing requirement, namely the

triggering of investigatory and conciliatory procedures, rings hollow since application of the toll is contingent on the existence of a class action asserting identical or similar claims. The class representatives will necessarily have brought the claims to the EEOC prior to the filing of the class action, and the conciliatory mechanisms will already have been in place at the time a plaintiff seeks to assert the toll. This Court concludes that the *American Pipe–Parker* analysis applies equally well to putative class members who have yet to file an administrative claim. *Cf. Lo Re v. Chase Manhattan Corporation,* 431 F.Supp. 189, 194 (S.D.N.Y.1977) (when at least two plaintiffs had properly initiated class action, other plaintiffs need not have filed claims with the EEOC in order to join as co-plaintiffs); *see also Albermarle Paper Co. v. Moody,* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 2370 n. 8, 45 L.Ed.2d 280 (1975) (unnamed class members who did not file with EEOC could receive backpay awarded to class); *Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876, 882–83 (8th Cir.1977) (individual need not file separately, even though no class action, since defendants had notice and to avoid multiplicity of claims). As applied to the facts of this case, this Court reaffirms that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class." *American Pipe, supra,* 414 U.S. at 554, 94 S.Ct. at 766, *cited in Parker, supra,* 462 U.S. at 353–54, 103 S.Ct. at 2397.

Application of the tolling rule, however, depends on a number of factors, each related to the general question whether the class action fairly put defendant on notice for the claims made in the present action. *See American Pipe, supra,* 414 U.S. at 555, 94 S.Ct. at 767 (essential fairness is satisfied when the class complaint puts defendant on notice of the substantive claims and number and generic identities of potential plaintiffs). This Court must consider (1) whether the claims made by plaintiff in this action are substantially similar to or encompassed by those alleged in the class complaint, *Foster v. Gueory,* 655 F.2d 1319, 1322 (D.C.Cir.1981) (joinder of co-plaintiffs who had not filed with EEOC); *Shannon v. Hess Oil Virgin Islands Corp.,* 100 F.R.D. 327, 331 (D. St. Croix 1983) (intervention of plaintiffs into as yet uncertified class action), and (2) whether plaintiff's claims arise in the same general time frame as those alleged in the class action. *Jackson v. Seaboard Coast Line Railroad Corp.,* 678 F.2d 992, 1012 (11th Cir.1982) (joinder of co-plaintiffs, who were putative class members, after class claims dropped).

The class complaint alleges that American Express engages in various acts of racial discrimination, including failure to promote qualified blacks, failure to pay blacks comparable wages, failure to provide black employees with equal notice or opportunity for jobs within the company as they become vacant or are created, provision of unequal fringe benefits and termination of a disproportionate number of blacks because of their race. Class representative Hall complained of unequal pay and failure to promote. Class representative Theobalds complained of failure to provide training, failure to pay equal salary and failure to promote. The time frame for the alleged acts of discrimination spanned from the early sixties through the time of filing, which was August 28, 1980. Affidavit of Joseph Garcia, ¶ 2. The class representatives filed complaints with the EEOC prior to the filing of the class action. *Id.* at ¶ 3.

In this action, Sharpe alleges that from 1973 until his termination in September, 1981 American Express denied him the same conditions and privileges of employment and that defendant terminated his employment because he was black. Sharpe also alleges that after receiving the initial notice of termination American Express did not make available to him the same opportunities for transfer as it did for white employees. Sharpe's complaint asserts essentially similar allegations to those made in the class complaint. Although Sharpe complains of discriminatory treatment regarding termination, transfer and condi-

tions of employment, while Hall and Theobalds complain of discriminatory treatment regarding training, promotion and salary, the class complaint fairly put defendant on notice as to the issues raised in plaintiff's complaint. In *Shannon*, the court concluded that allegations of gender discrimination based on promotion and discharge were "essentially identical" to allegations of discriminatory hiring for purposes of deciding whether plaintiff could join the action even though she had not separately filed with the EEOC. 100 F.R.D. at 331. Similarly, in *Lo Re*, this Court held that a number of persons could join as plaintiffs in a class action, even though they had never filed charges with the EEOC or the New York State Division of Human Rights, since the filing plaintiffs had alleged a broad variety of discriminatory practices similar to those raised by the persons seeking to join. 431 F.Supp. at 195.

Sharpe's complaint also arises out of the same general time frame as that of plaintiffs in the class action. Even though the class action had been filed in 1980, Sharpe complains of discriminatory treatment culminating in his termination over a eight-year period ending in 1981. The *Shannon* court decided that the two of the three plaintiffs seeking to join the action made allegations in the same general time frame as the named plaintiffs in the underlying action by alleging grievances that happened within a year or two after the allegations made in the underlying complaint. *Id.* On the other hand, the court denied a plaintiff the opportunity to join since he complained of acts which occurred six years after the named plaintiffs had filed their administrative complaints. In this action, Hall and Theobalds filed their administrative complaints in 1979 and 1980, only a few years prior to the alleged discriminatory termination. For these reasons, this Court concludes that time within which Sharpe had to file with the New York State Division of Human Rights was tolled by the pendency of the class action.

### Date of Filing with the EEOC and the State Division

■ Plaintiff filed with the EEOC, not the State Division, on May 14, 1982, 234 days after September 22nd, the date that class certification was denied. The EEOC, for reasons not known to this Court, did not forward the complaint to the State Division until at the latest June 7, 1982.[5] Plaintiff argues that the complaint should be deemed filed with the State Division for purposes of determining timeliness on the date that the EEOC received the complaint. Using that analysis, the filing would be timely since the deferral period would end on the 291st day, and the complaint would be filed with the EEOC within the 300–day period set by Congress. Defendant argues, on the other hand, that the complaint cannot be deemed filed with the State Division until the date it was sent by the EEOC. Applying that analysis, the complaint may not have been filed with the State Division until after 240 days after the toll ended. The sixty-day deferral period would have thus not ended until after 300 days following the commencement of the limitations period.

As a general rule, an action is deemed commenced with the state agency when the EEOC forwards the complaint to the state agency. *See Virgo v. Local Union 580*, 107 F.R.D. 84, 87 n. 8 (S.D.N.Y.1985) (citing *Mohasco, supra*, 447 U.S. at 814 n. 16, 100 S.Ct. at 2491 n. 16; *Reinhard v. Fairfield Maxwell, Ltd.*, 707 F.2d 697, 700 n. 4 (2d Cir.1983)); *see Mohasco, supra*, 447 U.S. at 816, 100 S.Ct. at 2492. Though not necessarily binding, EEOC regulations state that "State or local proceedings are deemed to have commenced on the date such document [the complaint] is mailed or hand delivered." 29 C.F.R. § 1601.13(a)(4)(i)(B).

In making his argument that this Court should deem the state action commenced on the date that the EEOC received plaintiff's complaint, plaintiff relies on *Roberts v. Arizona Board of Regents*, 661 F.2d 796 (9th Cir.1981), in which the court deemed a dis-

---

**5.** The complaint in the record has a "received" stamp on it dated June 1 as well as a notation stating that it was received on June 7. Thus it is unclear on which date the State Division actually received the complaint.

crimination complaint filed with the state agency on the date the EEOC received it. In that case, however, the normal rules were complicated since the EEOC never referred the complaint to the appropriate state agency. *Id.* at 799. The court adopted the date of receipt by the EEOC since EEOC regulations in effect at the time required immediate referral to the appropriate state agency. *Id.*

The facts of this case are clearly distinguishable since the EEOC did file the complaint with the State Division, albeit a number of days later. *See Virgo, supra,* 107 F.R.D. at 87 n. 8 (complaint filed with the EEOC on November 10 not filed with state division until sent to state division on December 2). Furthermore, EEOC regulations no longer require immediate deferral to the state agency. *See* 29 C.F.R. § 1601.13(4)(a) (1987). Finally, the Supreme Court has "reject[ed] the argument that the timeliness requirements would be adequately served by allowing the EEOC to treat a letter received on the 291st day as 'filed' and interpreting the § 706(c) [42 U.S.C. § 2000e–5(c)] prohibition as merely requiring it to postpone any action on the charge for 60 days." *Mohasco, supra,* 447 U.S. at 826, 100 S.Ct. at 2497. Therefore, state proceedings did not commence in this case until the EEOC forwarded plaintiff's complaint to the State Division. The record is not clear as to when the EEOC actually sent the complaint to the State Division. Stamps on a copy of the complaint attached to Kenady's affidavit (exh. 4) indicate that the State Division received the complaint on June 1 or 7. Unfortunately, nothing in the record indicates the date on which the EEOC sent the complaint to the state division, and that date is the relevant one in determining the date the action was commenced with the State Division. Accordingly, the Court finds that this single issue of fact exists and precludes summary judgment at the present time.

## CONCLUSION

This Court concludes that plaintiff received adequate notice in June, 1981 to commence the running of the applicable limitations period. The limitations period was tolled, however, by the pendency of a related class action since plaintiff's allegations are similar in substance and time to the claims raised in the class action. Summary judgment is denied since a material issue of fact exists concerning the date in which the EEOC forwarded the complaint to the State Division.

SO ORDERED.