Whitehead, J.
The plaintiff, Eileen Andrews (“Andrews”), brought this action against her employer, Arkwright Mutual Insurance Company (“Arkwright”), claiming wrongful termination under both G.L.c. 151B and common law, breach of an oral employment contract, and intentional infliction of emotional distress. Arkwright now moves for summary judgment on all counts, and for the reasons outlined below, the motion is ALLOWED.
UNDISPUTED FACTS
The material undisputed facts are as follows:
This action arises from Arkwright’s termination of Andrews, a pregnant employee. In December of 1987, Arkwright through its Director of Corporate Communications, Esther Sprano (“Sprano”), hired Andrews as a Communications Specialist. Although Sprano and Andrews spoke about the possibility that Andrews could become a vice-president in the future, the parties did not enter into a written contract.
In the fall of 1991, Arkwright began reviewing options to reduce costs. Actions taken by Arkwright’s Executive Vice-President, Mr. Ronald Jones (“Jones”), resulted in an undisclosed management decision to reduce the Corporate Communications staff, of which Andrews was a member.
At least two months later, on January 10, 1992, Andrews learned that she was pregnant, but she did not share this news with others at Arkwright until more than two weeks after that. In the meantime, Arkwright proceeded to formulate specific staff cuts in Andrews’s department. On January 14 or 15, 1992, management instructed Sprano to develop a plan to eliminate two positions in the department. Sprano, on the samé day, informed her staff of the instruction that she had received. This was the first time that Andrews or any other staff member learned of the decision to cut staff in their department. Thereafter, two staff members, Donna Cesario (“Cesario”) and Stephanie van Ness (“van Ness”) volunteered to be the staff members terminated.
Between January 14 and January 23, 1992, Sprano crafted two options to cut and restructure the Corporate Communications staff, and both plans contemplated cutting Andrews. The first plan cut two positions, naming Andrews and Stephanie van Ness. The second plan cut only Andrews. While developing these plans, Sprano discussed them with a member of her staff, Johanna Hetherton (“Hetherton”).
On January 23, 1992, Andrews shared the news of her pregnancy with others at Arkwright, including Sprano. In response, Sprano stated to Andrews, “What do you want me to do about it?” and “I hate working with pregnant women,” as well as, “It would be good then if it were you so you could stay home with the baby." On January 25, 1992, Sprano sent a final memorandum of her plans to one Moriarty, who decided to opt for the second plan and to cut only one position — Andrews. On January 29, 1992, Arkwright terminated Andrews.
On May 21, 1992, Andrews filed the instant action. On the same day, her attorney sent a letter to the Massachusetts Commission Against Discrimination (“MCAD") asking for an appointment before the Commission to evaluate the status of any claim which Andrews might have against Arkwright. Over a year passed, and Andrews received no response from the MCAD. Andrews’s attorney eventually contacted the MCAD by telephone on June 22, 1993, and inquired about Andrews’s claim. A MCAD employee, Ms. Diane Coty, suggested to Andrews’s attorney that she file a complaint “nunc pro tunc” to May 21, 1992. On July 7, 1993, after some communication with the MCAD, and approximately 18 months after Andrews had been terminated by Arkwright, Andrews filed a formal complaint with the MCAD. The MCAD complaint purported to be filed “nunc pro tunc, May 21, 1992.”
After counsel for both Andrews and Arkwright had sent inquiries relative to the record filing date, the MCAD through its General Counsel, George Napolitano, responded by letter dated October 14, 1993, in which he stated:
[T]he Commission has determined to take no further action on this matter. The commission considers this case closed and the statute of limitations issue is properly before the Court in which the civil action in this matter is now pending.
No further proceedings were had before the MCAD.
DISCUSSION
Summary judgment shall be granted where (1) there are no material facts in dispute and (2) the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving parly bears the burden of affirmatively demonstrating these elements. Pederson v. Time Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991), accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra 404 Mass. at 17. ”[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed *484 facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
General Laws c. 151B: Wrongful Termination
The first issue before the court is whether Andrews properly may maintain an action for wrongful termination under the provisions of G.L.c. 151B. By virtue of G.L.c. 151B, §9, no such action is viable unless a plaintiff has first initiated formal proceedings before the MCAD. In that regard, the Code of Massachusetts Regulations requires that a formal complaint must be signed by the Complainant, verified,[1] and filed[2] with MCAD within six months after the alleged unlawful conduct. 804 Code Mass. Regs. §1.03(2) (1993).
In this case, the letter which Andrews’s attorney sent to the MCAD dated May 21, 1992 did not comply with the requirements of §1.03(2). The letter was neither signed by Andrews, nor was it verified. Simply put, it was a letter of inquiry, not a complaint.
Andrews’s subsequent formal complaint was untimely. Andrews filed the complaint with the MCAD on July 7, 1993, approximately 18 months after her termination from Arkwright and, thus, well after the six-month limitation period set forth in §103(2) had lapsed. Andrews’s failure to comply with §103(2) precludes any recovery on her 151B claim in this court. Christo v. Edward G. Boyle Ins. Agency Inc., 402 Mass. 815, 817 (1988).
Andrews makes one principal argument to the contrary. In some cases, a plaintiff who fails to timely and properly file a complaint, may have the running of the six-month period equitably tolled. Andrews contends that her complaint to the MCAD should be equitably tolled because the MCAD had wrongfully failed both to respond to her letter of inquiry dated May 21,1992, and to inform her that more was required of her. However, “courts have taken a uniformly narrow view of equitable exceptions to limitations periods.” Earnhardt v. Commonwealth of Puerto Rico, 691 F.2d 69, 71 (1st Cir. 1982); see Christo v. Edward G. Boyle Ins. Agency, Inc., 402 Mass. at 817 (Supreme Judicial Court adopted equitable tolling principles contained in “cognate federal law” relative to filing complaints with federal agencies).
With respect to the particulars to this case, it is well established that a complaint for discriminatory conduct will not be equitably tolled if a plaintiff retains an attorney during the statutory filing period. Welty v. S.F.&G. Inc., 605 F.Supp. 1548, 1560 (N.D. Ala. 1985); Comfort v. Rensselaer Polytechnic Institute, 575 F.Supp. 258, 260-61 (N.D.N.Y. 1983) (“summary judgment is appropriate due to plaintiffs engagement of counsel prior to expiration of the filing deadline ... In such a situation the court finds that the equitable principles discussed above should not come into play”); Sanders v. Duke University, 538 F.Supp. 1143, 1146, n.2 (M.D.N.C. 1982) (court refused to apply doctrine of equitable tolling because plaintiff represented by counsel): Downie v. Electric Boat Division, 504 F.Supp. 1082, 1087 (D.Conn. 1980) (court granted summary judgment for defendant because of late filing of complaint and refused to apply equitable tolling because plaintiff retained counsel); Bennett v. Russ Berrie & Co., 564 F.Supp. 1576, 1580-81 (N.D. Ind. 1983) (same).
In the instant case, Arkwright terminated Andrews on January 29, 1992. By May 21, 1992, Andrews had retained an attorney regarding her termination. This was approximately two months prior to the lapse of the statutory filing period. Therefore, Arkwright’s complaint should not be equitably tolled. This is true even though employees of the MCAD may have done more to assist Andrews in meeting the six-month deadline. See Leite v. Kennecott Copper Corp., 558 F.Supp. 1170, 1173 (D.Mass. 1983), aff'd, 720 F.2d 658 (1st Cir. 1983) (court granted summary judgment for defendant who, while represented by counsel, failed to meet period of limitation even though E.E.O.C. represented there was “no problem” with the period of limitation); Needham v. Beecham, Inc., 515 F.Supp. 460, 467-68 (D.Maine 1981) (court did not apply equitable tolling because plaintiff retained counsel, even though he had been misled by a Department of Labor Compliance officer); Otstott v. Verex Assurance, Inc., 481 F.Supp. 1269, 1271 (N.D. Tex. 1980) (court considered equitable tolling inapplicable because plaintiff consulted with counsel, even though E.E.O.C. employee gave plaintiff misadvice).
Although this court seeks not, as a rule, to raise procedure over substance “(i]n the long run experience teaches that strict adherence to the procedural requirements specified by the (administrative agency] is the best guarantee of even handed administration of the law.” Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980). Accordingly, summary judgment against Andrews relative to her 15 IB claim is warranted.
Common Law Claim for Discriminatory Termination
The second issue before the court is whether Andrews can maintain a common law wrongful discharge claim independent of her 151B claim. In Melley v. The Gillette Corp., 19 Mass.App.Ct. 511, 513 (1985), aff'd 397 Mass. 1004 (1986), the court concluded that G.L.c. 151B preempted a common law claim for age discrimination because (1) such a claim did not exist before the adoption of G.L.c. 151B, and (2) the creation of such a common law action would interfere with G.L.c. 151B, a comprehensive remedial statute.[3] This logic also applies to the instant case.
Here, Andrews has no common law action for pregnancy discrimination unless this court recognizes one now. Prior to the 1971 amendment to §4 of G.L.c. 151B, St. 1971, c. 661, an employee had no remedy for discharge on account of pregnancy. See Massachusetts Electric Co. v. Massachusetts Commission Against Discrimination, 375 Mass. 160, 167-72 (1978) (Supreme Judicial Court, reviewing G.L.c. 151B, rejected Supreme Court’s conclusion in General Electric Co. v. Gilbert, 429 U.S. 125 (1976), that discrimination based on pregnancy was not sex-based discrimina *485 tion). And although G.L.c. 151B “broadens existing remedies rather than requiring resort to it as exclusive of all other remedies,” this court will not recognize a new common law claim for Andrews. Melley v. Gillette Corp., 19 Mass.App.Ct. at 513 (quoting Comey v. Hill, 387 Mass. 11, 20 (1982))[4] (emphasis supplied).
Additionally, Andrews, in her submissions relative to the instant action, refers only to a 151B claim, and in open court conceded that her common law claim for pregnancy discrimination merges with her 151B claim. In light of the above, summary judgment against Andrews is warranted with respect to her common law claim for pregnancy discrimination.
Breach of Implied Employment Contract
The third issue before the court is whether Arkwright breached Andrews’s employment contract. Whether an employment contract is terminable at will or “for a definite period of time... depends upon all the attendant conditions surrounding the agreement, as well as upon its terms, when the latter are not specific and clear.” Kravetz v. Merchants Distributors, Inc., 387 Mass. 457, 460 (1982) (quoting Maynard v. Royal Worcester Corset Co., 200 Mass. 1, 4 (1908)). In this case, Andrews’s employment was terminable at will because the term period was neither specific nor clear. Andrews concedes that she was given no guaranty of permanent employment, and that her conversations with Sprano were of a general nature regarding possible future advancement in the company. Her employment, therefore, was terminable at will as a matter of law.
It is well settled that “an employee at will . . . [is] subject to termination or modification at any time for any reason or no reason at all.” Kolodziej v. Smith, 412 Mass. 215, 221-22 (1992) (citing Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 150 (1989)).[5] Althoughaterminableatwill contract “impliedly contain[s] a covenant of good faith and fair dealing,” Kravetz v. Merchants Distributors, Inc., 387 Mass. at 461; (citing Madaloni v. Western Mass. Bus Lines, 386 Mass. 877 (1982)), as noted above in this memorandum, Andrews cannot maintain a claim for termination due to pregnancy under both G.L.c. 151B and this implied covenant. Melley v. Gillette Corp., 19 Mass.App.Ct. at 513.
Accordingly, with respect to Andrews’s claim for breach of an employment contract, summary judgment for Arkwright is appropriate.
Intentional Infliction of Emotional Distress
The final issue before the court is whether Andrews can maintain a claim for intentional infliction of emotional distress. The Workers’ Compensation Act, G.L.c. 152, §§1-86, bars common law actions where (1) the plaintiff is an employee, (2) her condition is a “personal injury” within the meaning of the compensation act, and (3) the injury is shown to have arisen “out of and in the course of employment.” G.L.c. 152, §26. See Foley v. Polaroid Corp., 381 Mass. 545, 549 (1980) (cases cited).
In this case, the Worker’s Compensation Act specifically includes claims for intentional infliction of emotional distress within its definition of “personal injury,” thereby barring Andrews’s common law claim.
No mental or emotional disability arising principally out of a bona fide, personnel action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injury within the meaning of this chapter.
General Laws chapter 152, §29. Thus, summary judgment against Andrews on her claim for intentional infliction of emotional distress is warranted.
ORDER
It is hereby ordered that the defendant’s motion for summary judgment be ALLOWED in its entirety.

 Verification for the purposes of 804 CMR 1.00 consists of:
(a) The signing of the complaint under oath before a notary public by the Complainant, a class representative, or a person authorized by an organization to file a complaint;
(b) A jurat signed under pains and penalties of perjury by the Complainant, class representative or person authorized by an organization to file a complaint.

 Filing may be “by the complainant, personally or through his/her authorized representative by delivering it personally or by U.S. Mail to any of the Commission’s offices.” 804 Code Mass. Regs. §103(2) (1993).

 “We think that where, as here, there is a comprehensive remedial statute, the creation of a new common law action based on the public policy expressed in that statute would interfere with that remedial scheme. Not only would the legislative preference for an administrative solution be circumvented, but serious problems would be posed as to the extent of the remedy to be provided.” Melley v. Gillette Corp., 19 Mass.App.Ct. at 513.

 General Laws Chapter 1513, §9 provides that “as to acts declared unlawful by section four, the procedure provided in this chapter shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.”

 None of the established exceptions to the at-will rule apply to the case at hand. Exceptions to this general at-will rule exist for employees discharged for following the law, see Hobson v. McLean Hosp. Corp., 402 Mass. 413, 416 (1988), employees performing important public deeds such as coop-eratingwith law enforcement officials, see Flesner v. Technical Communications Corp., 410 Mass. 805 at 811; and employees who refuse to commit unlawful acts, see Rose v. Putnam Management Co., 398 Mass. 205, 209-10 (1986).